FRANK SMITH, Appellee, v. HENRY H. RICE, Appellant.

**HUSBAND AND WIFE: Alienation of Affections—Evidence—Declarations of Wife.** Declarations of a wife, not in the presence of her husband, tending to show (a) that she had great affection for her husband, or (b) that she had but little affection for him, or (c) that she had wholly lost her affection for him, *made prior to any alleged alienation of affections of the wife,* are relevant, material and competent on the issue as to just what measure of affection, if any, was alienated by the alienator, and, consequently, what amount, if anything, should be assessed as damages.

PRINCIPLE APPLIED: See No. 2.

**APPEAL AND ERROR: Presumption—Burden to Show Error—Questions Not Revealing Purpose.** The rule "that error may not be predicated on the exclusion of a question when counsel fails to disclose the matters to which the witness would testify," should not be technically applied. If the general nature of the offered testimony *is reasonably clear,* (a) in view of the issues, or (b) from the evidence already admitted, or (c) from any other circumstance apparent to the court and counsel, then the mere fact that the question does not disclose the *very answer* which the witness is expected to make, affords no shield for the error in excluding it.

PRINCIPLE APPLIED: Plaintiff pleaded that defendant alienated the affections of plaintiff's wife. Defendant denied, and also pleaded that plaintiff had lost the affections of his wife, (a) because plaintiff had always neglected his wife, (b) because

plaintiff had been guilty of adultery and other scandalous conduct, and (c) because plaintiff was a gambler and spendthrift.

Plaintiff was allowed to show the amicable relations existing between himself and wife *prior* to defendant's alleged interference, including declarations of the wife, during such time, tending to show strong affection on the part of the wife for plaintiff.

Defendant produced witnesses, and, in a preliminary way, showed that they had knowledge of the relations existing, during the same time, between plaintiff and his wife, and that they had talked with the wife concerning such relations. These witnesses were then asked. (the exact form of the questions not appearing) to repeat the wife's words on this subject. The questions, along with the preliminary showing, were excluded as incompetent, immaterial, irrelevant, hearsay, and not in presence of the husband.

*Held*, the exclusion was erroneous.

*Held*, also, that there was no reasonable doubt as to the purpose of the offer, or as to the nature of the testimony sought.

*Held*, also, that the error was especially manifest as to the testimony of one witness taken by deposition.

EVIDENCE: Relevancy, Materiality and Competency—Evidence
3   Similar to That of Adverse Party.   Establishing a rule of evidence as to the trial of a cause, and then applying the rule to only *one* of the parties, is reversible error.

PRINCIPLE APPLIED: See No. 2.

*Appeal from Cherokee District Court.*—W. D. Boies, Judge.

Friday, November 24, 1916.

Action at law to recover damages for alienation of the affections of the plaintiff's wife. Judgment for plaintiff, and defendant appeals.—*Reversed* and *Remanded*.

*Robert Healy, Claude M. Smith,* for appellant.

*Herrick & Herrick, Faville & Whitney,* for appellee.

Weaver, J.—Plaintiff and his wife were married in 1889, and lived together about 25 years. During that period, they made their home in several different states, and moved from one home to another many different times. Plaintiff was on occasion a clerk in a store, a rural mail carrier, and at times

otherwise employed. Defendant, who is a cousin of the wife, is a widower, with a family of his own. He occasionally visited the Smiths. In the year 1914, plaintiff and wife were living near Cherokee; and, plaintiff being sick, defendant went there for the professed purpose of helping care for the plaintiff and looking after the farm work. Later, the Smiths removed to Cherokee, taking up their home with defendant, where the wife began keeping boarders, in which business she was still engaged at the time of the trial. This, defendant says, was made necessary by the fact that plaintiff and wife were in reduced circumstances, and had no home of their own.

It is the claim of plaintiff that, taking advantage of the opportunity thus afforded him, defendant supplanted him in the affections of his wife and alienated her from him. The defendant denies the wrongful conduct charged by plaintiff, and alleges in substance that, during all of plaintiff's married life, he neglected his wife, was guilty of adultery and other scandalous offences against her, was a gambler and spendthrift, and thereby caused her to withdraw her affections from him and compelled her to refuse to live longer with him. Upon these issues, there was a jury trial, resulting in a verdict and judgment for plaintiff in the sum of $6,500.

Several grounds are assigned for a reversal, but we shall confine our attention to such only as seem to be determinative of the appeal.

I. The appellant complains of the ruling of the trial court refusing to allow certain witnesses offered by him to testify to statements made by plaintiff's wife concerning her feelings toward her husband. The time to which the witness' attention was directed was during that period of the married life of the pair before it is claimed that defendant exercised any influence over the woman. To better understand the force and effect of the exception thus taken, it should be said that the wife, as a witness on the trial, testified that,

1. HUSBAND AND WIFE: alienation of affections: evidence: declarations of wife.

after they were married and living in South Dakota, plaintiff confessed to her that he was afflicted with venereal disease, and told her of his association with squaws; and she swears that on one occasion she detected him in the act of adultery with another woman. She further testified that he was lazy and inefficient; that practically all the money they ever accumulated was by her own labor; and that he was addicted to gambling. There was also other evidence that plaintiff neglected his wife, leaving her alone at night when she was pregnant and in delicate health, and that he was unkind and indifferent to her at the birth of her child. She further testified that her love and affection for her husband had ceased "many years since." To quote her own language, "It has been a constant wear out until it is entirely gone." Referring to a time when they lived in Dakota, one witness said she had visited Mrs. Smith at her home, remaining there with the family some two weeks. She had also, on later occasions, visited with the wife at her home in Manchester, and later in Cherokee. On these visits, she had conversations with Mrs. Smith concerning her husband and their domestic relations. Being asked to repeat the wife's words or statements on this subject, the plaintiff's objections were sustained, and the evidence excluded, on the ground that the matter called for was "incompetent, irrelevant, immaterial and hearsay, and conversation had not been in the presence of her husband." Plaintiff's motion to strike out the preliminary statements made by the witness was also sustained. Another witness, testifying by deposition for defendant, said she had lived in the same house with Smith and wife in Dakota when Mrs. Smith was pregnant and in delicate health, and when her child was born; that Mrs. Smith came frequently into the witness' rooms, crying and complaining of the neglect of her husband. Witness also said, as of her own knowledge, that Smith "neglected her and left her alone nights," and further said, "I was with her when the baby was born, and I know he was unkind and indifferent to her."

This answer was also stricken out, as being a statement of conclusions and not of fact. On the other hand, plaintiff offered and was permitted to introduce testimony of witnesses who said they had been in the Smith home before defendant went there, and noticed the relations appearing to exist between husband and wife. One of them says, "I thought they got along nicely; I noticed no lack of affection between them. Before that time they were happy and affectionate, according to my observation. I noticed a lack of affection after Rice went there." Another witness for plaintiff says, "I visited them frequently at Manchester. They always seemed to be happy." Another, having said that he visited the husband and wife at Manchester, was asked whether he then had any conversation with the wife "with regard to her feelings toward her husband," and, over defendant's objection, was allowed to say, "She often made the remark she had the best man of the four girls," and that he saw nothing that indicated any lack of affection between them. Still another was allowed to say that their conduct toward each other was "all right so far as I could see;" "there was no discord in the Smith home while they were living in Manchester;" "Smith never had the reputation of being a gambler;" "he was not neglectful of his wife and out late nights." Plaintiff himself testified:

"Our affections commenced to cool about 1913. Never had any trouble with my wife and family until she turned me out of the home about six months ago."

In view of the issues joined and the testimony admitted on behalf of plaintiff, we think this exclusion of the testimony offered by the defendant concerning the domestic relations of plaintiff and wife, and of her statements concerning the same made before the alleged alienation, was erroneous. That evidence of this nature is competent is well settled, although here and there may be found an inconsistent precedent. To entitle plaintiff to recover, he is required to establish, by a preponderance of evidence, not only that he has lost the

affection of his wife, but that such loss was caused by the wrongful conduct and inducement of the defendant. If found entitled to recover, then the jury is called upon to consider the question of damages; and, in order that the amount may be reasonably and properly proportioned to the wrong or injury, it is of prime importance that there be evidence of the relations existing between the husband and wife prior to the alleged interference between them by the defendant. True, plaintiff's neglect, if any, of his wife, his ill treatment of her, or even his adultery, would not of itself justify defendant in enticing the wife away from him; yet if, by such conduct, plaintiff had already completely lost his wife's love and affection, then no recovery could be had for any sum. If, however, it should be found that the wife had not entirely withdrawn her love and affection from her husband, and defendant poisoned her mind against him and enticed her to abandon him, then his right of recovery would be complete; but evidence of any lack of harmony between them, or of any conduct on the husband's part having a natural tendency to weaken or destroy the bond of conjugal affection, would still have to be considered, as we have just suggested, upon the question of damages. To this effect, see the following authorities:

"Any unhappy relations existing between the plaintiff and wife, not caused by the conduct of the defendant, may affect the question of damages, and were properly submitted to the jury; but they are in no sense a justification or palliation of the defendant's conduct. They are not allowed to affect the damages because the acts of the defendant are less reprehensible, but because the condition of the husband is such that the injury which such acts occasion is less than otherwise it might have been." *Hadley v. Heywood,* 121 Mass. 236.

"The fact, however, that the plaintiff and his wife lived unhappily together before the defendant appeared, and even were much estranged, would not constitute a bar to the plain-

tiff's action, but would go . . . in mitigation of damages."
*Prettyman v. Williamson* (Del.), 39 Atl. 731, 734.

"Circumstances which show that plaintiff possessed no
comforts of a domestic character are proper to be given in
evidence in mitigation of damages. If the plaintiff and his
wife lived unhappily before the improper advances of the
defendant such evidence is pertinent. The defendant can-
not be chargeable with destroying plaintiff's domestic com-
fort when he never enjoyed such comfort. If the plaintiff
was in the habit of improper intimacy with other women
his sense of moral propriety could not be much offended by
the loss of virtue in his wife. The guilt of the defendant is
not therefore diminished but the plaintiff has suffered less
damage. The merits of plaintiff but not the demerits of
defendant are less; both however are considered by the jury
in forming their verdict, and all circumstances which dimin-
ish the one or enhance the other are proper subjects for their
consideration." *Smith v. Masten*, 15 Wend. (N. Y.) 270.

Complaints by the wife, before the alleged wrongful acts
of the defendant, of ill treatment received at the hands of
the plaintiff (her husband), are admissible in evidence, and
their exclusion by the trial court is reversible error. *Palmer
v. Crook*, 7 Gray (Mass.) 418, 419.

In the cited case, the Massachusetts court says:

"If the defendant invaded domestic peace, destroyed
conjugal felicity, and . . . seduced the wife's affections
from a kind and tender husband, he inflicted a much more
grievous wrong, and incurred a far heavier penalty in dam-
ages, than he would have done if love, harmony and affec-
tionate intercourse had been previously impaired or lost,
through the misconduct and cruel treatment of the husband.
The state of the wife's mind and feelings towards the hus-
band before the alleged infidelity is therefore directly in issue,
as bearing upon the question of damages, and it may be
shown, in the usual mode in which proof of such a fact is
made in courts of law, by evidence of declarations and state-

ments of the wife, indicating the condition of her affections towards her husband during their cohabitation and prior to the alleged seduction. Such is the rule, whenever it is necessary to show the mental feelings of an individual."

So, also, it is said by the Vermont court:

"In actions for criminal conversation, it is relevant to inquire into the terms on which the husband and wife lived together before her connection with the defendant." *Fratini v. Caslani* (Vt.), 29 Atl. 252.

See also *Luick v. Arends* (N. Dak.), 132 N. W. 353, 364; *Cross v. Grant,* 62 N. H. 675; *Horner v. Yance* (Wis.), 67 N. W. 720; *Perry v. Lovejoy,* 49 Mich. 529; *Edgell v. Francis* (Mich.), 33 N. W. 501.

Our own cases appear to be entirely consistent with the doctrine of the foregoing precedents. In *Bailey v. Bailey,* 94 Iowa 598, 604, it was held error to exclude proof offered by defendant of conduct on the part of the plaintiff wife which would have the natural tendency to lessen or alienate from her the affections of her husband. In *Bailey v. Kennedy,* 148 Iowa 715, 720, we applied the principle, saying:

"It is urged in argument by appellant that his previous unhappy relations with his wife constitute no bar to the present action, and this may be conceded as a legal proposition. But these unhappy relations are a very important consideration when the mere loss of his wife's affection is put forward by the plaintiff as a circumstance sufficient to warrant the inference that such loss was caused by the conduct of the defendant, even though such conduct was not criminal nor in itself wrongful."

See, also, *Pooley v. Dutton,* 165 Iowa 745, 750.

Speaking to the same point, Judge Cooley says:

"The extent of the injury in any case must depend in great measure upon the previous relations of the parties. If these were cordial and affectionate, and such as are expected to exist when a suitable marriage has been formed under a proper sense of the obligations and responsibilities that belong

to it, the wrong of the seducer who succeeds in withdrawing the wife's affections from her husband, and induces her to live with him a life of shame, it is impossible adequately to measure. If, on the other hand, the husband was a libertine, and has brought shame upon his family by his own notorious misconduct, and if the wife, after the destruction of her affection by his own abuse and misconduct, has finally surrendered her own honor, it is difficult to understand what claim he can have to legal consideration. And between these extreme cases there may be numerous others differing so widely in their facts that, while it may be wise to give a right of action in all, yet the measure of redress must be left largely to the discretion of the proper legal tribunal, which shall be at liberty to award much or little, according as they find that much or little has been lost by the complaining party. And even though the husband may himself have been chargeable with no wrong in his marital relations, yet if the wife's affections were withdrawn from him before the defendant is chargeable with interference, the fact is important as bearing upon the question of damages.'' 1 Cooley on Torts (3d Ed.), page 467; 3 Wigmore's Evidence, § 1730.

''Whenever the mental feelings of an individual are to be proved, the usual expressions of such feelings are original evidence, and often the only proof of them which can be had.'' *Jacobs v. Whitcomb,* 10 Cush. (Mass.) 255.

The foregoing citations are by no means exhaustive of the list of authorities to the same general effect. The rule recognized by them is too well established to be successfully questioned, and is grounded in reason and justice. It follows that the exclusion of the testimony of the witnesses offered by defendant concerning the relations existing between plaintiff and his wife prior to the alleged interference of the defendant, was erroneous.

But, say counsel for appellee, the ruling below may be sustained on the ground that appellant did not disclose to

the court the matters to which the witnesses would testify.

2. APPEAL AND ER-
ROR: presump-
tion: burden to
show error:
questions not re-
vealing purpose.

The rule thus invoked is one which this court has applied in several cases, and, under appropriate circumstances, its observance can work no material prejudice to either party; for it is the right of the court and of the opposing party to have interrogatories to witnesses so framed as to afford some reasonable suggestion of the nature of the answer sought to be elicited, in order that objections may be intelligently made and ruled upon. But this rule is one which may easily be carried too far. It should have no mere technical application, and if, in view of the nature of the issues being tried, or from the evidence already admitted, or other circumstances apparent to court and counsel, the general nature of the offered testimony is reasonably clear, the mere fact that the question does not disclose the very answer the witness is expected to make, affords no shield for error in excluding it. There can be no reasonable doubt as to the purpose of defendant in offering this evidence, or of the nature of the testimony sought to be obtained from the witness. Defendant was charged with alienating the affections of the plaintiff's wife. He alleged in his answer that such alienation was due to the plaintiff's neglect and ill treatment of his wife, and to his bad conduct and general worthlessness, and that the wife had ceased to love and respect him long before the time of the alleged wrong charged to the defendant. It is perfectly apparent that, for example, the testimony of Mrs. Covey was offered in support of defendant's claim in this respect. She is a sister of the wife's; she was a frequent visitor in the home of the Smiths at different periods and at different places during their married life; she had opportunity to know the relations existing between husband and wife, and had talked with the latter many times concerning such relations; yet her answers with relation thereto were excluded. Such answer, if confined to the scope of the question, was neither incompetent, immaterial nor irrelevant, and it con-

stituted a recognized exception to the rule against hearsay testimony. Indeed, the ruling went still further, not only refusing to hear the witness' answer as to the main fact, but striking out all she had said in a preliminary way showing her competency to speak on the subject. The criticism is even more clearly applicable in the ruling upon the testimony of Mrs. Sampson, who, as we have already shown, having said she lived in the same house with husband and wife, and shown herself quite intimately acquainted with their domestic relations, was asked to state fully and particularly anything she might know concerning their relations with each other. This evidence was taken on deposition, and the witness related acts and conduct coming under her observation on the part of the husband toward his wife, clearly tending to show neglect and indifference on his part, and spoke of its apparent effect upon the wife. On objection of plaintiff, both question and answer were excluded. There was in this instance no uncertainty in question or answer. Both were competent, under the rules of law already considered, and defendant's exceptions to these rulings must be sustained.

There is still another ground upon which the rulings must be held erroneous, even though otherwise it should be thought that the rule contended for by appellee would be applicable. Plaintiff, in making his own case, offered the testimony of a brother of the wife's. The witness, after showing his visits to the family, was asked:

3. EVIDENCE: relevancy, materiality and competency: evidence similar to that of adverse party.

"Did you have any conversation at any time during that period with your sister with regard to her feelings toward her husband during any of that period of time?"

He was also asked whether he saw or knew of anything between Smith and his wife indicating that they were not on affectionate terms. Defendant objected to the competency and materiality of these questions, but the objections were overruled, and the witness proceeded to repeat statements

made by his sister, and also to express his own opinion or conclusion that ''They seemed to be happy. . . . I saw nothing between them which indicated a lack of affection.'' Having established this rule of evidence for the trial of the case, it should have been given consistent application throughout; or, if the court concluded that the first ruling was erroneous, it should have been withdrawn and the equilibrium of advantage restored between the parties by striking out that which had been erroneously admitted. We think, however, there was no error in the original ruling. To say the least for the testimony offered by defendant, it was responsive to that introduced by plaintiff, and upon the same line of interrogation, and was, therefore, unobjectionable. *Scott v. Wilson,* 157 Iowa 31, 35; *Parker v. Railroad Co.,* 131 N. C. 827; *Farmers' H. L. C. & Reservoir Co. v. White* (Colo.), 75 Pac. 415; *Ransom v. Bartley,* 70 Mich. 379; *Jenness v. Simpson,* 84 Vt. 127; *Hays v. Metropolitan St. R. Co.* (Mo.), 170 S. W. 414.

The errors pointed out are material, and require a reversal of the judgment below.

II. Appellant argues that the damages assessed are excessive, and we are strongly impressed with the conviction that such is the case, and the seemingly extraordinary character of the award is not without weight in emphasizing the conclusion above expressed that a new trial is demanded in the interests of justice. In view of another trial, it is better that we do not discuss those features of the record leading to this conclusion.

Other errors assigned are for the most part without merit. The remainder are of a character not likely to arise on another hearing.

The judgment of the district court is reversed, and the cause remanded for a new trial. *Reversed* and *Remanded.*

Deemer, Gaynor and Preston, JJ., concur.