B. W. WELTY, Appellee, v. F. B. SPARKS, Appellant.

HUSBAND AND WIFE: Alienation of Affections—Causal Con-
1   nection.  Causal connection between the acts· of one accused of alienating the affections of the spouse of another, and the actual loss of affection by such spouse for such other spouse, necessarily lies at the foundation of an action to recover damages for such alleged alienation. Evidence reviewed, and held insufficient to show such connection.

HUSBAND AND WIFE: Alienation of Affections—Evidence—Dec-
2   laration of Alienated Spouse.  In an action for damages for the alienation of the affections of a wife, statements by the wife to her husband relative to what the defendant had said and done, bearing on such alleged alienation, are admissible, if admissible at all, solely to show the state of mind of the wife, but not as substantive evidence that the defendant had actually done said things or said said things.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge,

SATURDAY, MAY 19, 1917.

ACTION at law to recover damages. The alleged cause of action is stated in two counts: First, that defendant wrongfully alienated the affections of plaintiff's wife; and, second, that defendant seduced and debauched plaintiff's wife. On trial in the district court, the jury found for the plaintiff on the first count or charge only, and assessed his recovery at $1,000. From the judgment entered on this verdict, the defendant appeals.—*Reversed and Remanded.*

*Sager, Sweet & Edwards* and *W. J. Ainsworth,* for appellant.

*C. B. Hughes* and *W. B. Ingersoll,* for appellee.

WEAVER, J.—The principal point made for a reversal of the judgment below is that the record is without sufficient evidence to support the verdict of the jury. As above stated, the charge made by the plaintiff as a basis for recovery was twofold: First, alienation of the wife's affections; and, second, criminal conversation with the wife. In support of the second count, the plaintiff and another witness called by him testified that, on one occasion, they together saw the defendant and plaintiff's wife in the act of adultery. While this testimony is characterized by some features of marked improbability, yet, had the jury believed it and found in plaintiff's favor on that issue, the finding could not have been said to be without support in the evidence. But the jury did not so find; in other words, the plaintiff did not make good his charge of criminal conversation, and, if his recovery of damages is to be sustained at all, it must be on the theory that the evidence shows some wrongful act or conduct on the part of defendant by which he induced or led the plaintiff's wife to withdraw her affections from her husband.

1. HUSBAND AND WIFE: alienation of affections: causal connection.

It is not enough to show or prove that the wife did in fact become alienated from her husband, nor would it be enough to show that she became infatuated with or transferred her affections to the defendant, but, before the latter can be held liable for damages, it must further appear by a preponderance of the evidence that he wilfully, wrongfully or intentionally induced such alienation. *Bailey v. Kennedy,* 148 Iowa 715, 720. And such indeed is the law as laid down by the trial court in its charge to the jury. Bringing the record to the test of this rule, we are constrained to hold that the objection made by the appellant to the sufficiency of the evidence is well taken, and that the verdict returned thereon cannot be permitted to stand. We shall not attempt to rehearse the testimony.

It is sufficient to say that, if we exclude
from our consideration the evidence offered
by plaintiff of an alleged act of adultery
between his wife and defendant,—an issue of
fact on which the jury found against him,—
there is no competent evidence whatever of
any act or word of the defendant having any fair tendency
to show a purpose on his part to alienate the affections of
the wife from her husband. The defendant is a practicing
physician, and became acquainted with Mrs. Welty through
a professional call to attend her in confinement. The evi-
dence further tends to show that thereafter, and during a
period of several months, she called at defendant's office
on various occasions, and that he called at her home two
or three times. Except as to the last of these calls (the
occasion of the alleged act of adultery, concerning which
plaintiff failed to convince the jury), no witness for the
plaintiff claims to have been present or to have the slight-
est knowledge of what occurred or of what was said or
done at such interviews. The defendant and Mrs. Welty
unite in testifying that each and all of these meetings at
the defendant's office and at her home were for the sole
purpose of obtaining professional advice and treatment
either for Mrs. Welty herself or for her children. There
is no evidence of any meeting between these persons at
any other time or place, nor of any other communication
or correspondence passing between them. No one claims
to have observed any manifestations of affection or of un-
becoming familiarity between them. Excepting the one al-
leged incident above mentioned, the evidence of which we
think must be disregarded on this appeal, plaintiff and his
counsel place their reliance on his testimony that, about
the time she began consulting with the defendant, or soon
thereafter, she manifested a decreasing interest in her chil-
dren and husband and their general family welfare; that she

*2. HUSBAND AND WIFE: aliena- tion of affec- tions: evi- dence: declara- tion of alien- ated spouse.*

refused to regard his objections to her employment of the defendant's services; and that she told plaintiff that "Dr. Sparks thought she was too nice a woman to be on a farm." Now it may be conceded that this and possibly other evidence of like import is of some probative value as tending to show the wife's condition or state of mind, or that she had in some degree lost her wifely regard for her husband, but it in no manner tends to show that such alienation, if any, was chargeable to any wrongful act done or wrongful influence exercised by the defendant. *Childs v. Muckler*, 105 Iowa 279; *Warren v. Graham*, 174 Iowa 162; *Smith v. Rice*, 178 Iowa 673. It requires a very liberal enlargement of the rules of evidence to permit proof of hearsay statements made by the wife to her husband, not in the presence of the defendant, concerning the conduct of the latter; but, conceding that our precedents support their admissibility in cases of this character, it is, nevertheless, the established rule that they are only to be considered to show the state of the wife's feelings toward her husband, and not as in any degree tending to prove that defendant did the wrongful acts with which he is charged by the plaintiff. Indeed, this was the instruction given by the trial court, and should have governed the jury in its deliberation on its verdict. It may also be said that the wife was subject to just criticism if she in fact persisted in employing the defendant's services after her husband objected thereto. But there is no evidence that defendant was in any way responsible for such persistence on her part. Plaintiff does not pretend that he ever made his objection known to the defendant until the very last visit of the latter to his home, and there is no apparent reason to believe that defendant knew or believed that his services were objectionable to the plaintiff. Indeed, plaintiff admits that, upon the occasion of the last or next to the last visit made to his home, he himself called the defendant to treat his

wife for a sore throat, following an operation to which she had submitted for the removal of her tonsils. He says in explanation:

"In the shape her throat was in, and as Sparks did the work, as she said, I thought it no more than right that he should tend to it."

This circumstance tends strongly to show that such objection as he might have had to the defendant's employment by his wife was not of a very serious character. This thought is further emphasized by the fact that, having called the doctor for the treatment of his wife, he went away from home, leaving her to receive the visit alone. While the plaintiff, by his own testimony, and inferentially by one or two of his witnesses, seeks to minimize or cast doubt upon the wife's ill health at the time she was consulting the defendant, she testifies to a chronic ailment dating back to the time of her first confinement, and, with respect to this condition, she is corroborated by the defendant and disputed by no one. Plaintiff admits his wife's earlier condition in this respect, and that he had, on one or more occasions, taken her to a physician for treatment. The expert testimony in the case is to the effect that the ailment of which plaintiff's wife complained is one requiring frequent and prolonged treatment, and that the treatment administered therefor, according to the defendant's statement, was in accordance with the approved practice of the profession. The mere fact that a woman, being afflicted or believing herself afflicted with any physical trouble, calls upon a physician at his office or calls him to her home for advice and help, does not in itself afford the slightest ground for reflection upon her character or the character of the physician, nor should a jury be allowed to draw any inference of wrong therefrom. Thousands of pure and reputable women, wives, mothers and daughters, above all reproach, are making such calls daily everywhere, and to permit this

most delicate and responsible relation of physician and patient to be made a byword for the tongue of scandal is not to be tolerated, without some reasonable degree of affirmative proof that it has been abused or made the screen or cloak for lechery or other immoral or unlawful purpose. So long as all the proof adduced concerning the relation or association of the physician and his patient is consistent with good faith and pure motives, it should be so construed by both court and jury. Such rule is essential, not alone to the protection of an honorable profession, but to the protection of the good name and honor of womanhood as well.

As we have already said, the trial court charged the jury: First, that, in order for the plaintiff to recover on the first count of his petition, the jury must find that the defendant committed some of the wrongful acts therein charged and that such conduct on his part was designed and intended to alienate the affections of plaintiff's wife from her husband, and thereby he did effect or bring about such alienation; and, second, that the testimony by plaintiff of statements alleged to have been made to him by his wife was not to be considered as substantive evidence that defendant had in fact said or done the things so related by her.

Applying the law as we have hereinbefore stated it, and as given by the trial court to the jury, we are satisfied that the court erred in denying the defendant a new trial, and that the judgment below should be remanded for further proceedings in harmony with this opinion.—*Reversed.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.