ADEBAH RANK, Appellee, v. CLARA KUHN, Appellant.

No. 46664.

OCTOBER 16, 1945.

Alan Loth, of Fort Dodge, for appellant.

Paul E. McCarville, of Fort Dodge, for appellee.

GARFIELD, J.—Plaintiff and Francis Rank were married September 10, 1930. They have a daughter, eleven. Defendant, age forty-two, a widow, is a sister of Francis' mother. Francis is thirty-four. Defendant owns a life estate in a quarter-section farm three and one-half miles east of Fort Dodge, where she lives. In April 1942, defendant leased a part of the farm to Francis' brother, Louis, who occupied the small tenant house on the farm for about eleven months. In the fall of 1942 a controversy arose between defendant and Louis which resulted in the commencement of an ejectment suit against him by defendant. Louis and family were ejected from the farm in March 1943. Plaintiff's husband, Francis, took the side of defendant in this controversy and a fist fight took place between the two brothers.

While Louis was occupying the tenant house on the farm Francis and his family were living in Fort Dodge. Shortly after Louis left the tenant house, Francis, his wife, and daughter moved in under an arrangement whereby Francis was to operate defendant's farm. Francis and his wife separated July 11, 1943, and the latter brought this action against defendant for alienation of her husband's affections. Following trial to the court without a jury, judgment for plaintiff for $2,700 was entered. Defendant has appealed.

I. Trial commenced September 7, 1943. Rule 179(a), Rules of Civil Procedure, effective July 4, 1943, provides:

"The Court trying an issue of fact without a jury * * * shall find the facts in writing, separately stating its conclusions of law; and direct an appropriate judgment."

Apparently in an attempt to comply with this new Rule, the court filed its "Findings, Conclusions and Judgment," which fills about eight pages of the record. Defendant's first contention is that the findings do not support the judgment because there is no finding that defendant intended to alienate the affections of plaintiff's husband. The contention is without merit.

The court's findings state, in part:

"After the most careful consideration of this case, I am of the opinion that plaintiff, without fault on her part, has been

done a great injustice, and I can not avoid the conclusion that defendant was guilty of such misconduct in her associations with the plaintiff's husband as to be the main cause of the final break-up between plaintiff and her husband. * * * The fact that plaintiff's husband was faithless to his wife and was blamable along with defendant for the wrong done plaintiff, does not relieve defendant of her liability. * * *

"From the foregoing considerations my findings of fact and conclusions of law are as follows: (1) The plaintiff has established her charge that defendant was guilty of wrongful association and intimacies with the plaintiff's husband during the time in controversy. (2) That defendant knew her association with the plaintiff's husband was causing trouble and discord between them. (3) As a result of the defendant's misconduct in the respects charged plaintiff has lost the affection, care and companionship of her husband. * * *

"Upon the basis of the foregoing findings my conclusion is that plaintiff is entitled to recover damages against the defendant for the injuries sustained."

It is well settled that findings of a trial court are to be broadly and liberally construed, rather than narrowly or technically. In case of doubt or ambiguity, findings will be construed to uphold, rather than to defeat, the judgment. In re Estate of Evans, 228 Iowa 908, 918, 291 N. W. 460; 5 C. J. S. 686, section 1656b; 3 Am. Jur. 461, 462, 463, sections 897, 898; 64 C. J. 1272, section 1149. Wherever, from the facts expressly found, others may fairly be inferred which will support the judgment, such inference will be drawn. 64 C. J. 1279, section 1156. See, also, 5 C. J. S. 696, section 1656e. We have held that in construing a decree the intent of the court must be determined from all parts of the instrument and effect given to that which is clearly implied as well as to that which is expressed. Weir & Russell Lbr. Co. v. Kempf, 234 Iowa 450, 455, 12 N. W. 2d 857, 860.

It is frequently said that an action for alienation of affections is for an intentional tort (Heisler v. Heisler, 151 Iowa 503, 506, 131 N. W. 676) and will lie only where the spouse's affections are purposely or intentionally alienated. See 27 Am. Jur.

129, section 527; 42 C. J. S. 317, section 662; 3 Restatement of the Law, Torts, section 683. If it were necessary, in order to support the judgment, to hold that a finding of such purpose or intent is fairly to be inferred from the court's findings "of wrongful association and intimacies" and "misconduct," we believe we would be justified in so doing. But we think the findings as made are sufficient.

The three essential elements of such a cause of action as this are: (1) wrongful conduct of the defendant (2) loss of affection or consortium and (3) causal connection between such conduct and loss. 27 Am. Jur. 125, section 523. An actual intent to alienate is not necessary if defendant's conduct is inherently wrong and tends to and does have the effect complained of. Bailey v. Kennedy, 148 Iowa 715, 716, 126 N. W. 181 (Evans, J.); 42 C. J. S. 317, section 662. See, also, Welty v. Sparks, 179 Iowa 1390, 1391, 1393, 162 N. W. 614, 615 (Weaver, J.), where it is said it must appear that defendant "wilfully, wrongfully or intentionally induced such alienation." We there held the evidence "in no manner tends to show that such alienation, if any, was chargeable to any wrongful act done or wrongful influence exercised by the defendant."

In Smith v. Rice, 178 Iowa 673, 677, 678, 160 N. W. 6, 7, we say that plaintiff must prove "such loss [of affections] was caused by the wrongful conduct and inducement of the defendant." In Pooley v. Dutton, 165 Iowa 745, 750, 147 N. W. 154, 156, it is said that defendants can be made liable only by a showing the loss of affections "has been caused by wrongful and malicious interference on defendants' part." In Busenbark v. Busenbark, 150 Iowa 7, 17, 18, 129 N. W. 332, we say in effect that plaintiff must prove defendants' "wrongdoing" caused the loss of affection. See, also, Price v. Price, 91 Iowa 693, 698, 60 N. W. 202, 29 L. R. A. 150, 51 Am. St. Rep. 360.

In this connection, we may observe that after the court's findings were filed defendant filed a motion under Rule 179(b), Rules of Civil Procedure, asking that the findings be amended and made more specific in some fourteen respects. But the court was not asked to make a more specific finding on the question of defendant's intent. Nor did defendant's motion for new trial state that the findings did not support the judg-

ment because of failure to find that defendant acted intentionally. Even though it was the court's duty under Rule 179(a) to find the facts, the circumstances just mentioned would seem to be worthy of some consideration in determining the sufficiency of the findings.

II. Defendant next contends that plaintiff's petition states a cause of action for criminal conversation, not for alienation of affections, and since the court found the evidence insufficient to prove sexual relations between defendant and plaintiff's husband, there could be no recovery.

We think the petition states a cause of action for alienation of affections. We have already set out the essential elements of such an action. The gist of the action of criminal conversation is adultery between the defendant and plaintiff's spouse. Newcomer v. Ament, 214 Iowa 307, 310, 242 N. W. 82, and cases cited. Both causes of action belong to the same class, arise from the marriage relation, and seek damages for loss of consortium. 27 Am. Jur. 136, 137, section 536; Gross' Admr. v. Ledford, 190 Ky. 526, 228 S. W. 24, 14 A. L. R. 689, 692.

A cause of action for alienation of affections does not necessarily, *though it may,* involve a loss of affection through adulterous relations. 27 Am. Jur. 136, section 536. In an alienation suit, although not essential to recovery, adultery between defendant and plaintiff's spouse may be shown in aggravation of damages. 42 C. J. S. 348, section 693; 27 Am. Jur. 143, 146, section 545; 3 Restatement of the Law, Torts, section 683, comments c and k. It is therefore entirely proper to include in a petition for alienation of affections, by way of aggravation, an allegation of adultery. It may fairly be concluded that is what was done here. The applicable principle here bears some analogy to the rule that a petition for breach of promise to marry may include an allegation of seduction in aggravation of damages. See Geiger v. Payne, 102 Iowa 581, 585, 69 N. W. 554; Nolan v. Glynn, 163 Iowa 146, 158, 142 N. W. 1029, Ann. Cas. 1916C, 559; Freed v. Carlson, 196 Iowa 961, 964, 195 N. W. 723; 11 C. J. S. 812, section 43c.

The petition here is in a single count. It alleges that from the time of the marriage to the happenings complained of,

there existed between plaintiff and her husband the usual affection of wife and husband; plaintiff and her husband lived happily together; the events of July 11, 1943, when the parties separated, were the culmination of a long series of acts by defendant in an effort to alienate plaintiff's husband and break up their home. This is followed by a recital of such acts by defendant, which fills about a page and a half of the record. Nothing is said in this recital regarding adultery. This is followed, however, by a brief allegation that during all of said time defendant has been guilty of illicit relations with plaintiff's husband.

No attack was made on the petition in the trial court. The trial lasted nine days. The bulk of the testimony is apparently directed to a case of alienation of affections. Very little of the testimony bears on the question of adultery. Prior to the filing of her motion for new trial defendant made no claim that the petition did not state a cause of action for alienation of affections. The trial court apparently so treated it throughout the trial.

In effect, defendant is now claiming there is a fatal variance between plaintiff's petition and the proof, i.e., that plaintiff pleaded a case of criminal conversation but proved alienation of affections. Rule 106 provides, in part:

"No variance between pleading and proof shall be deemed material unless it is shown to have misled the opposite party to his prejudice in maintaining his cause of action or defense."

There is no showing that defendant was misled to her prejudice in maintaining her defense. In fact, the contrary appears. We are clear defendant's second contention cannot be sustained. As bearing on this question, see Cross v. Hermanson Bros., 235 Iowa 739, 743, 16 N. W. 2d 616, 618, and authorities there cited.

III. Defendant next asserts that the evidence is insufficient to warrant the judgment. Again we must disagree. In testing the sufficiency of the evidence, of course it is our duty to view it in the light most favorable to plaintiff. The findings below will not be disturbed if supported by substantial evidence.

It is conceded plaintiff has lost the affections of her husband. He refuses to live with her. Of course, mere loss of the husband's affections does not render defendant liable unless her misconduct was a substantial factor in causing such loss. 3 Restatement of the Law, Torts, section 683, comment i. See, also, Pooley v. Dutton, 165 Iowa 745, 750, 147 N. W. 154; 27 Am. Jur. 128, 129, section 526. If plaintiff's testimony is believed, it is ample to show such causal connection. The able and experienced trial court was impressed with plaintiff's honesty and truthfulness. Her testimony finds corroboration in that given by close blood relatives of defendant. Defendant's sister and her husband, defendant's brother and his wife, and Francis' sister (defendant's niece), as well as other blood relatives of defendant, gave some corroboration to plaintiff's testimony.

There is substantial evidence that, commencing in August 1942, defendant, with increasing frequency, solicited plaintiff's husband to come to her home and elsewhere with her; the husband spent more and more of his time in defendant's company, as many as several evenings a week, sometimes staying as late as two and three o'clock; the husband refused to account to plaintiff for his whereabouts and said it was none of her business what was going on; defendant and Francis would talk privately about things they did not want plaintiff to hear; they brought beer to plaintiff's home and drank it together— plaintiff did not drink beer; in November, Francis, in plaintiff's presence, put his head in defendant's lap; defendant made no attempt to move him away and they stayed in that position the whole evening; during October to January Francis spent more time with defendant than in his own home; defendant came to plaintiff's home frequently in the evening, talked mostly to Francis, she would leave about twelve and Francis would go outside and sit in the car with her for a half hour; on one occasion defendant gave Francis money with which to buy a liquor book, and another, money with which to buy whisky; they both became intoxicated in defendant's home, Francis carried defendant from the barn to her bed in the house and put her under the covers.

After plaintiff and Francis moved into defendant's tenant house about April 1, 1943, "every place my husband was on the farm she was." In June Francis was lying on the davenport on defendant's porch, defendant was sitting there with her housecoat on, he "was monkeying around with her," he had his hands on her breasts, pinching her; on July 14th Francis was lying on defendant's davenport and she had both her arms around his neck. After plaintiff and her husband separated on July 11th Francis lived in defendant's house and they were frequently seen in each other's company down to the time of trial. One night in the early fall of 1942 Francis' sister found her brother in defendant's house. "He saw us coming and hid in the bathroom." The same sister (a niece of defendant) testified that around November 1942 Francis would frequently leave defendant's home between midnight and two or three in the morning. A sister of defendant (an aunt of Francis) gave similar testimony. Defendant's brother said that shortly before this action was commenced he had heard rumors regarding defendant and Francis and told his sister she "ought to stay away from him and leave him alone."

There is much other testimony, of course, but we have mentioned enough to indicate that the court's finding of misconduct by defendant which resulted in the loss of Francis' affections for plaintiff is not without evidential support. There is ample testimony to warrant the conclusion that as the relationship between defendant and Francis became more intimate Francis' affections for his wife correspondingly diminished.

It is also contended the evidence is insufficient because, it is said, plaintiff had lost the affections of her husband before defendant came into the picture. Much reliance is placed on the fact that on October 27, 1941, plaintiff sued her husband for separate maintenance. The suit came on to be heard January 7, 1942. The husband made no contest except as to the amount of support money. Before the decree was signed, however, the parties effected a reconciliation and the suit was dismissed. From January 1942 until the separation in July 1943 plaintiff and Francis lived together and he supported her. There is ample evidence that, until defendant interfered to disrupt the marriage, Francis had at least some affection for

his wife. Even defendant's sister, Francis' mother, who lives close by, testified, "They got along real well as far as I know. * * * I thought Francis and Adebah got along average, like anybody else."

In an action of this kind, in the absence of evidence to the contrary, it is presumed that husband and wife have affection for each other. Bailey v. Bailey, 94 Iowa 598, 602, 63 N. W. 341; 42 C. J. S. 332, section 687a. Even if plaintiff and her husband were living unhappily together before defendant appeared, and were somewhat estranged, this would constitute no bar to the action but should be considered only in assessing the damages. Plaintiff would still be entitled to whatever affection her husband held for her, as well as his support and companionship. Smith v. Rice, 178 Iowa 673, 678, 679, 160 N. W. 6; 42 C. J. S. 322, section 672; 27 Am. Jur. 125, 126, 127, section 524; id. 137, section 537; 3 Restatement of the Law, Torts, section 683, comment k. See annotation 108 A. L. R. 408, 428.

IV. Finally, it is contended the award of $2,700 is excessive. But we think we are not justified in interfering. It is apparent from the trial court's findings that very careful consideration was given to the amount of recovery. Due weight was given to the state of affections and the relations between plaintiff and her husband prior to the time defendant entered into plaintiff's domestic affairs. It is apparent from the findings that a larger amount would have been allowed if there had been greater harmony and happiness between plaintiff and her husband.

All questions presented have been considered.—Affirmed.

MILLER, C. J., and OLIVER, BLISS, WENNERSTRUM, MANTZ, SMITH, and MULRONEY, JJ., concur.

HALE, J., not sitting.