Charles E. **BROOKLEY** et al.,
Plaintiffs,

v.

Leonard B. **RANSON**, Jr., **Defendant.**

No. 72-C-21-CR.

United States District Court,
N. D. Iowa,
Cedar Rapids Division.

May 31, 1974.

---

Timothy S. White, Cedar Rapids, Iowa, for plaintiffs.

A. W. Bass, James F. Pickens, Cedar Rapids, Iowa, for defendant.

## ORDER

McMANUS, Chief Judge.

This action for alienation of affections and criminal conversation is before the court for decision after trial to the court on February 25, 1974.

Plaintiff Charles Brookley, in Count I, seeks to recover for the alleged alienation of affection of his wife by defendant and, in Count II, seeks to recover for alleged criminal conversation between his wife and defendant. Plaintiff Craig Brookley, in Count III, seeks to recover for the alleged alienation of affection of his mother by defendant.

From the evidence presented at trial, the following facts appear: Plaintiff and his wife were married in 1957. Several times during the marriage the relationship became strained, with the final breakdown occurring in March of 1971 when plaintiff discovered that defendant, a Methodist minister, and plaintiff's wife were having a relationship, as evidenced by several letters written by defendant to plaintiff's wife.[1] Plaintiff's wife moved out of the family home in May of 1971 to live with her parents in Kaiser, West Virginia. Defendant moved to Cedar Rapids, Iowa in August, 1971 to join the faculty at Mt.

Mercy College, where he is presently Dean of Students and working on his Ph.D. at the University of Iowa. His wife and children still live in Frostburg, Maryland. Plaintiff's wife moved to Cedar Rapids in August of 1971 and worked at Collins Radio for several months before returning to West Virginia in December of 1971. During her stay in Cedar Rapids she saw defendant several times a week and did general housework for him. The relationship between defendant and plaintiff's wife terminated in December of 1971 and she has resided in Kaiser, West Virginia with her parents since that time.

### Jurisdiction

Defendant has challenged plaintiffs' allegation of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs, at all times material, have been citizens of Maryland. A dispute exists, however, with regard to the citizenship of defendant at the time of the filing of this lawsuit on May 10, 1972. Plaintiffs contend that defendant was a citizen of Iowa on that date whereas defendant contends that he was still a citizen of Maryland.

In a diversity action, the burden is on the plaintiff to establish the court's jurisdiction under 28 U.S.C. § 1332 by a preponderance of the evidence. The requisites for establishing the domicile or citizenship of a party are physical presence in the alleged domicile plus an intention by such party to make the domicile his home indefinitely or an absence of an intention to make his home elsewhere. Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973); Krasnov v. Dinan, 465 F.2d 1298, 1300–1301 (3rd Cir. 1972).

Admittedly, defendant retained numerous contacts with the state of Maryland after he came to Iowa in Au-

---

1. Although defendant characterized these letters as "friendship letters" which would strengthen a strong marriage, the court views them otherwise in view of phrases such as "my·darling," "I love you," "your passionate desire," "my beautiful mate."

gust of 1971.[2] Nevertheless the letters which he wrote plaintiff's wife indicating that Cedar Rapids would be their new home and the indefinite nature of his job and stay in Iowa evidence both his intent to make Cedar Rapids, Iowa his domicile and the absence of any intent to make his home elsewhere. Defendant testified that he presently has no intent to leave his job at Mt. Mercy and that after he obtains his Ph.D. he has no specific plans or jobs in mind. Defendant also testified that it is uncertain as to when and whether his family will join him although it is a possibility, as evidenced by the fact that his wife has recently sought employment in Cedar Rapids. Accordingly, from reviewing the evidence presented at trial, it is the court's view that defendant, at the time of the filing of this lawsuit in May of 1972, was a citizen of Iowa and this court thus has diversity subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332. See Krasnov v. Dinan, supra, 1302–1303.

### Count I—Alienation of Affection— Charles Brookley

Although it appears from the evidence that defendant alienated whatever affection plaintiff's wife had for him, the basic question presented is whether Iowa law or Maryland law governs plaintiff Charles Brookley's claim for alienation of affection since Iowa recognizes such a cause of action whereas Maryland has statutorily abolished such actions. Article 75C § 2, Annotated Code of Maryland (1957).

■ Federal courts in diversity cases are required to apply the forum's choice of law rules in resolving conflicts of laws questions. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, this court must look to Iowa's conflicts law to determine whether Iowa or Maryland law governs plaintiff's claim for alienation of affections. Guaranty Trust Co. v. York, 326 U.S. 99, 107–112, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

■■ The Iowa Supreme Court has adopted "the most significant relationships rule" for determining the substantive law to be applied in litigation involving a torts-conflict question. Berghammer v. Smith, 185 N.W.2d 226, 231 (Iowa 1971); Fuerste v. Bemis, 156 N. W.2d 831, 833 (Iowa 1968). "The basic premise of the most significant relationships theory is that the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." Fuerste v. Bemis, supra, at 834. In actions for loss of consortium and similar matters involving the marital relationship, the Iowa court has held that "the law of the marital domicile ordinarily prevails." Berghammer v. Smith, supra, 185 N.W.2d at 232. See Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72, 74–75 (1945).

■ Applying Iowa's conflicts law to the facts of this case, it is the court's view that the law of the marital domicile, Maryland, should be applied. Although some acts of alienation may have occurred in Iowa, the majority of such acts occurred in Maryland at a time when all parties were still residents of Maryland since the alienation was essentially completed by May of 1971 when plaintiff's wife moved out of the family home.

In view of Maryland's statutory abolition of the cause of action for alienation of affection, Count I of the complaint must be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P.

### Count II—Criminal Conversation

■ Although Maryland law no longer recognizes a cause of action for

---

2. Defendant has continued to vote in Maryland, is classified as a nonresident student at the University of Iowa, has a checking account in Maryland, a Maryland driver's license and license plates, files Maryland income tax returns and his family still lives there.

alienation of affection, the cause of action for criminal conversation still exists in that state as well as in Iowa. DiBlasio v. Kolodner, 233 Md. 512, 197 A. 2d 245, 248–51 (Md.1964); Rank v. Kuhn, 236 Iowa 854, 20 N.W.2d 72, 75 (1945). The burden of proof in an action for criminal conversation is on the plaintiff to establish by a preponderance of the evidence the existence of adulterous relations between defendant and plaintiff's spouse. The damages sought are for loss of consortium and proof of alienation of affection goes toward aggravation of damages. DiBlasio v. Kolodner, *supra*; Murrell v. Culver, 141 Md. 349, 118 A. 803, 806–808 (1922); Rank v. Kuhn, *supra*, 20 N.W.2d at 75.

From the evidence, it appears clear that defendant and plaintiff's wife enjoyed a relationship during 1971. Plaintiff Charles Brookley testified that on March 16, 1971, defendant and plaintiff's wife both admitted to him that they had had sexual relations in the past and were planning to get married. The letters which defendant wrote to plaintiff's wife also appear to indicate that their relationship was other than platonic. *See* note 1, *supra*. Finally, plaintiff's wife testified that she came to Cedar Rapids soon after defendant did, she saw him several times a week at his apartment and did general housework for him during her stay in Cedar Rapids.

Defendant, however, denied having sexual relations with plaintiff's wife and plaintiff has presented essentially only circumstantial evidence of sexual relations between defendant and plaintiff's wife.

■ Upon reviewing the record, it appears that the evidence on the question of whether defendant and plaintiff's wife engaged in an adulterous relationship is extremely close. Nevertheless, although plaintiff's evidence is essentially circumstantial, it is the court's view that he has adequately carried his burden of proof on this Count and has been damaged in the amount of $1,000.

### Count III—Alienation of Affection—Craig Brookley

Plaintiff Craig Brookley, age 16, seeks to recover for the alienation of affection of his mother by defendant.

 Although plaintiff cannot recover for acts occurring in Maryland by virtue of Article 75C § 2, Annotated Code of Maryland (1957), from the evidence at trial it appears to the court that sufficient acts of alienation by defendant of plaintiff's mother's affection for him occurred in Iowa to entitle plaintiff to maintain his cause of action under Iowa law, provided Iowa law recognizes such a cause of action by children.

In Hankins v. Derby, 211 N.W.2d 581, 584 (Iowa 1973), the Iowa Supreme Court specifically held that a child cannot recover for the loss of consortium or affection of his parent resulting from the negligence of a third party. In dictum, the court further stated that it would probably reach the same result where recovery is sought for an intentional tort, such as alienation of affection. Hankins v. Derby, *supra*, at 583.

Based upon Maryland's abolition of the cause of action for alienation of affection and the ruling of the Iowa court in *Hankins*, it is the court's view that plaintiff has failed to state a claim upon which relief can be granted and thus this Count must be dismissed pursuant to Rule 12(b)(6), Fed.R.Civ.P.

It is therefore

Ordered

1. The above shall constitute the findings of fact and conclusions of law of the court pursuant to Rule 52(a), Fed.R.Civ.P.

2. Counts I and III of the complaint are dismissed.

3. The Clerk shall enter judgment for plaintiff Charles Brookley against defendant in the amount of $1,000 and costs.