ODOM, Justice.
 

 Plaintiff prosecutes this appeal from a judgment sustaining an exception of no cause of action to its suit for the sum of $19,526.11, the value of a certain quantity of natural gas.
 

 As a cause of action plaintiff alleged that on September 30, 1929, it entered into a contract with defendant under the tenns of which defendant obligated itself to purchase from it and to pay for a certain minimum quantity of natural gas during a period named, at a stipulated price per thousand cubic feet, or to pay for the minimum quantity whether taken and used or not, all as per written contract attached to and made part of the petition.
 

 It is alleged that during the period named defendant was obligated to take and pay for a minimum quantity of 1,828,000,000 cubic feet of gas, whereas it took and paid for only 814,956,000 cubic feet; that the difference between the amount of gas taken and the minimum amount defendant obligated itself to take was 513,845,000 cubic feet, the value of which at the price agreed upon being $19,-526.11. This is the amount which plaintiff alleges defendant is due it under the contract.
 

 The exception of no cause of action was grounded upon the proposition that plaintiff had not alleged that it had on hand, and therefore was able to furnish, a quantity of gas up to the minimum called for by the contract, or more than was actually 'taken and used by defendant. The defendant, it seems, stressed the point before the lower court that, even though it had agreed to take and pay for a minimum quantity of gas, and although it had not done so, it could not be held liable for any quantity beyond the amount it took, in the 'absence of a showing that plaintiff had on hand, and was able to deliver, the additional quantity under the terms and conditions of the contract.
 

 One of the well-recognized rules of pleading is that a plaintiff must allege every ultimate fact necessary to be proved in order to recover. The trial judge was of the opinion that plaintiff could not recover without proving, in effect, that it had tendered to defendant the minimum amount of gas stipulated in the contract and expressed that view.
 
 *139
 
 Plaintiff then amended its original petition, and as touching this point it alleged further:
 

 “That plaintiff was never in default in any of its obligations imposed upon it by said contract, but performed each of its said obligations in good faith, and was always ready, able and willing to perform every such obligation.”
 

 “That plaintiff extended to defendant the exclusive right to take the gas produced by plaintiff’s wells and that defendant had refused such exclusive right during the life of the aforesaid contract, especially during the winter months hereinabove referred to.”
 

 It is then alleged that the pipe lines which comprised the gathering system referred to in the contract belonged to, and were under the control of, the defendant; that said pipe lines were connected with lines leading to plaintiff’s wells, and that the lines leading to plaintiff’s wells were equipped with valves which were under the exclusive control of defendant; that the quantity of gas which flowed from plaintiff’s wells into defendant’s pipe line or gathering system was regulated by the opening and closing of these valves. Then follows the allegation:
 

 “In the alternative plaintiff avers that defendant never sought to take from plaintiff’s wells and connections any more than 814,-956,000 cubic feet of gas which it actually did take during the said winter season, but that defendant had and refused the right to take up the minimum quantity of gas stipulated in the said contract for the aforesaid winter season and that such quantity of gas was
 
 available to the defendant to take in the manner provided in the annexed contract.”
 

 The lower court was of the opinion that the allegations in the petition, as amended, did not set out a cause' of action, and sustained the exception.
 

 Under the contract involved, plaintiff agreed to sell and deliver to defendant, and the defendant agreed to purchase and take from plaintiff, and to pay for, all of the gas which might be produced in a certain gas field then owned and operated by plaintiff, and:
 

 “Buyer (the defendant) agrees, in any event, to pay for the minimum amount of gas which it is required to take hereunder, unless excused therefrom under the terms of this contract.”
 

 The contract further provides that the place of delivery of all gas deliverable shall be at the seller’s wells, until such time as the seller may install a compressor station, and thereafter the place of delivery of the gas deliverable through said station “shall be on the discharge side thereof, but the place of delivery of gas deliverable under the natural gas pressure of the well shall continue to be at the wells.”
 

 The plaintiff reserved the right to erect a compressor station in order to enable it to, at all times, “deliver the minimum amount of gas that buyer may be entitled to purchase hereunder and agrees to use due diligence in operating its gas wells.”
 

 It seems to have been contemplated that the flow of gas from plaintiff’s wells under its natural pressure might not be sufficient to supply the minimum amount which defendant agreed to take, for which reason plaintiff reserved the right to erect a compressor station, the purpose of which was to
 
 *141
 
 enhance the pressure in the lines leading from its wells to defendant’s gathering system, thereby enabling plaintiff to deliver more gas than it could have done under the natural flow. There is no allegation that the compressor station was installed, and it must therefore be assumed that plaintiff was not able to deliver more gas than would flow through the pipes under the natural pressure of the wells.
 

 Plaintiff alleged that, in accordance with the provisions of the contract, its wells were connected with defendant’s main pipe line or gathering system by pipes equipped with valves, and that the quantity of gas taken was controlled by the opening or closing of these valves, which, it is alleged, were owned by defendant and at all times under its control. It is alleged further that by “opening and closing said valves defendant regulated and was able to regulate the quantity of gas that it took daily from plaintiff’s wells, and that by having such control of the valves, the defendant was in sole possession of the means by which the quantity of gas taken under the contract was regulated.” It is also alleged that defendant never at any time sought to take any more gas than it got and paid for.
 

 Counsel for defendant argue that plaintiff’s petition does not show that its wells would have delivered into defendant’s suction lines the minimum amount of gas during the particular period named, or that such amount would have been delivered “except for the failure or refusal of defendant to take the gas.” They say in brief that, if such allegations had been made, a cause of action would have been shown.
 

 We readily agree with counsel and the trial judges that, in order to recover, plaintiff would have to prove that it had on hand in its pipes ready for delivery the minimum quantity of gas called for by the contract, and that said quantity of gas would have been delivered into defendant’s pipe lines under the conditions which prevailed, if defendant had opened the valves and let it through. For, if plaintiff did not have the gas on hand, and if the gas on hand would not have passed through the valves, if opened, into the pipe line, then defendant could not have taken the gas, and most assuredly the defendant cannot be compelled to pay for gas it could not get.
 

 But we do not concur in the view that plaintiff has failed to allege that the gas would have been delivered into defendant’s pipe line or gathering system had the valves been opened. It is alleged that plaintiff was never in default on any of its obligations, but performed each of them in good faith, and that it was ‘‘always
 
 ready, able
 
 and willing to perform every such obligation,” and in paragraph 11 of the amended petition it is alleged that “such quantity of gas (meaning the minimum called for by the contract)
 
 ivas available to defendant to talce in flue manner provided in the annexed contract."
 
 (All italics ours.)
 

 These allegations, that is, the allegation that plaintiff was, ready and able to deliver the gas and the allegation that the gas yps available to defendant to take in the manner provided in the contract, taken and construed together as they must be, are tantamount to an allegation that plaintiff delivered a sufficient amount of gas into its lines and under such pressure as to permit the minimum
 
 *143
 
 quantity to
 
 be taken. That
 
 is what defendant says should have been alleged in order to show a cause of action.
 

 The contract unquestionably contemplated that plaintiff should produce such quantity of 'gas to make up the minimum, and further that the.gas should be put into the lines leading from plaintiff’s wells to defendant’s pipe lines or gathering system under sufficient pressure to flow into the pipe lines if the valves were opened. It is alleged that the gas was available to the defendant to take
 
 in the manner provided in the contract.
 
 That means necessarily that the gas was in the lines leading from plaintiff’s wells to defendant’s pipe line under sufficient pressure, as the contract provided.
 

 The word “available” means “capable of availing; having sufficient power, force, or efficiency for the object; effectual; serviceable ; such as one may avail oneself of; capable of being used to accomplish a purpose; usable; convertible into resource.” Webster.
 

 We think the word “available” used in plaintiff’s petition should be construed to mean that the gas produced by plaintiff was “capable of being used to accomplish a purpose,”' that is, the purpose of the contract, that being that the minimum quantity of gas was “usable.” The word “usable,” 'according to the same authority, means “that can be used.”
 

 Plaintiff alleged that it was
 
 ready
 
 to comply with its obligations. The word “ready” means “prepared for what one is about to do or experience; equipped or supplied with what is needed for some act or event; prepared for immediate movement or action; fitted, arranged, or placed for immediate use; causing no delay for lack of being prepared or furnished.” Webster.
 

 The word has another meaning, it is true. In one sense it means “willing, inclined, disposed,” but, when construed with other allegations of the petition, it is clear that the idea intended to be conveyed by the use of the word was that plaintiff had on hand gas for “immediate use, causing no delay for lack of being prepared or furnished.”
 

 We think plaintiff’s petition, construed as a whole and construed with the contract attached to and made part of it, shows that the plaintiff’s wells were papable of delivering into defendant’s pipe lines the minimum quantity of gas for which it is insisted that defendant pay.
 

 Por the reasons assigned, the judgment sustaining the exception of no cause of action is reversed, and it is ordered that said exception be overruled; and that the case be remanded to the First judicial district court for the parish of Caddo, and there reinstated on the docket of said court, to be proceeded with according to law; costs of this appeal to be paid by appellee.
 

 O’NIELL, C. J., and ST. PAUL, J., absent,,