KATHRYN MULLEN, appellant, v. GEORGE E. MULLEN, defendant, DANIEL E. HANNAN, administrator of estate of George E. Mullen, deceased, substituted defendant-appellee.

KATHRYN MULLEN, individually and as guardian of Charles Alfred Mullen and Margaret Sharon Mullen, claimants-appellants, v. DANIEL E. HANNAN, administrator, appellee.

No. 48628.

(Reported in 69 N.W.2d 420)

APRIL 5, 1955.

OPINION MODIFIED AND REHEARING DENIED JULY 27, 1955.

Doran, Doran, Doran & Erbe, of Boone, for appellants.

Steward & Crouch, of Des Moines, and George P. Soumas, of Perry, for appellee.

WENNERSTRUM, C. J.—This appeal involves two actions which, by agreement of counsel, were consolidated for trial. In one the court had for consideration claims against the estate of a divorced husband based on provisions of a divorce decree. In the other there was involved an application, by the administrator of the deceased former husband of the claimant in the probate matter, for modification of the decree in a prior divorce proceeding. The former wife had filed, in the estate of her divorced husband, a claim which was based upon a stipulation of settlement entered into in anticipation of a divorce and provisions in the decree. Monthly payments of alimony and support money, as well as a requirement for the creation of a fund for the education of the minor children of the parties, were provided for in the decree. As a defense in the claim action it was contended the monthly payments provided for in the decree terminated on the death of the husband and the provision in the decree relative to providing a fund for the education of the children had been complied with by providing for adequate insurance policies wherein the minor children were named beneficiaries. Subsequent to the death of the father payment of the insurance proceeds was made to the mother, guardian of the minor children. The administrator of the estate of the former husband was substituted as a party defendant in the divorce action. His application for modification of the decree was based on claimed change of circumstances. The claim action was tried before the court without a jury, and, as previously stated, the action for modification of the divorce decree was consolidated with it. The trial court held the monthly payments of alimony terminated with the former husband's death, and the provision in the decree that required funds be provided for the education of the minor children had been complied with by the issuance of life insurance policies on the life of the father made payable to them and the payment to them of the proceeds therefrom. The court further held there were changes in the circumstances of the parties which justified the modification of the decree to the extent of a complete

termination of the monthly payments. The court denied the claim for support money for the wife as well as the claim filed on behalf of the children. The divorced wife individually, and as guardian of the two minor children, has appealed.

Kathryn Mullen and George E. Mullen were married on June 10, 1928. There were four children born to those parties. They were divorced on December 6, 1946. Mullen later was married to and subsequently divorced from Emma Jeri Canarini. Thereafter Mullen and Lois Spencer were married on December 31, 1952. She survived him. He died intestate on February 28, 1953. Daniel E. Hannan was appointed administrator of his estate on March 3, 1953. Besides his wife, Lois Mullen, he is survived by the four children. The ages of the children at the time of the hearing were as follows: Paul Mullen, age 25, Marilyn Mussell, age 23, Charles Mullen, age 17, and Margaret Sharon Mullen, age 12.

Prior to the granting of the decree of divorce to the first wife of George E. Mullen there was entered into a stipulation of settlement. The provisions of the stipulation were incorporated in the decree signed by the trial court in virtually the same language.

It is provided in the divorce decree: "* * * that the defendant shall pay to the plaintiff by way of alimony the sum of $600 per month commencing with the 1st day of January, 1947, and continuing on the first of each and every month thereafter until September 1, 1949; commencing with September 1, 1949, and continuing on the first of each and every month thereafter *so long as the plaintiff shall live,* the sum of $500 per month, *subject, however, to conditions as hereinafter set out in this decree,* and judgment is hereby entered accordingly, with right of execution to make the same." (Italics supplied.)

The decree further provided: "* * * that as each of said minor children shall graduate from high school the said defendant *will make available the sum of $1200 per year for the use of each child in procuring a college education,* which said sum shall be paid upon a monthly basis to the plaintiff for the use and benefit of each of said children as they enter college, and for such purpose and to make certain that at least the sum of $4800

*will be made available* for each of said children's college education, defendant personally and his estate, in the case of his death, is bound to pay to the plaintiff for said children the sum of $4800 each for college education purposes, and judgment is entered accordingly, with right of execution to make the same."

During the lifetime of George Mullen he complied with the stipulation and the subsequent decree under which he was to pay his former wife support payments of $600 per month for a certain period and thereafter $500 per month. The divorced wife filed a claim for $126,050 against the estate of her former husband based on her life expectancy. At the time of his death she was 46 years of age and had a life expectancy of 24.43 years. At the time of the trial Kathryn Mullen had not remarried and was living in the home in Perry, Iowa, in which she and her former husband had lived. By a provision of the decree she was given the home property worth approximately $15,000. Prior to the divorce, title to this property had been in the wife's name. She also held title to a vacant lot in Perry. Title to these properties was confirmed in the wife by the decree. It was also decreed the wife should have the household furnishings in the home and the husband was required to furnish the wife a new Chevrolet sedan automobile. This was done. Under the decree Mrs. Mullen also was given title to 320 acres of farm land. There is evidence that this last mentioned property is worth $106,000. It was further provided in the stipulation as well as in the decree the defendant was to have the income from this particular farm land as long as he kept up the monthly payments to the plaintiff and also paid the taxes, insurance on the buildings on the farm, and also took care of the upkeep of the farm buildings. It was further provided if the defendant should become delinquent in any of the monthly payments for more than thirty days he would automatically forfeit his right to the income from this particular farm property.

Since the death of George E. Mullen, his former wife, Kathryn Mullen, has taken possession of the farm property, entered into a new lease with the tenant and has collected the income from it.

As heretofore noted, the decree provided that the defendant should be personally liable, and his estate in case of his death, to pay plaintiff for the education of each of the minor children the sum of $4800, payable $1200 per year and on a monthly basis. The court in its findings of fact found that shortly before Mullen died he took out a $10,000 life insurance policy made payable to the two minor children and that after his death this amount was paid to Kathryn Mullen, as guardian of the two younger children. The court concluded the payment of the sum of $10,000, the proceeds of the previously referred to insurance policy on the life of George E. Mullen, as well as the proceeds of other insurance policies in which the minor children were named beneficiaries, met the requirements for the educational fund referred to in the divorce decree. It should be noted that a total of $25,000 has been paid to the guardian of the two minor children as the proceeds of life insurance policies wherein the minor children were named as beneficiaries, each minor child receiving one half or $12,500.

I. It is the contention of Kathryn Mullen, the claimant-appellant, the court erred in not allowing her claim in full, which was based on her life expectancy. It is maintained George Mullen by the stipulation and decree, to which reference has been heretofore made, was bound to pay her the sum of $500 per month, as long as she lived, that the agreement became merged in the decree, and was a solemn and binding obligation upon his estate. She further asserts contingencies provided for in the stipulation and decree had not arisen during the lifetime of Mullen, and the contractual obligation survived his death.

As heretofore noted, the divorce decree provided Kathryn Mullen was given title to 320 acres of land "subject to encumbrances of record and the conditions of this decree * * *." The mortgage indebtedness on this land at the time of the entering of the decree was $20,400, which was subsequently paid by Mullen. The decree further provided in relation to the 320-acre farm: "* * * that in consideration of the defendant making the payments promptly to the said plaintiff as above set out and as agreed upon, that the said defendant shall have the use of the farm land described in this paragraph so long as he shall pay

the taxes, insurance upon the buildings * * *; and upon the further condition that if at any time the defendant fails to promptly pay any of the installments for support as herein decreed and is in arrears for a period of thirty days or more, then the defendant shall automatically forfeit all right to the use and income from said farm lands above described and upon filing of an affidavit showing said default plaintiff shall be entitled to the full income from said real estate and the defendant's use thereof as herein decreed shall automatically terminate and the defendant shall have no further right or interest to the use or income therefrom, and judgment is hereby rendered accordingly."

It was also provided in the decree: "* * * that should the defendant default in the payment of the alimony and support herein agreed upon to be paid by him to the plaintiff, and as provided for in this decree, at any time prior to September 1, 1949, his rights to the use and income from plaintiff's farm land thereby become forfeited, that then and in that event the support money accruing thereafter prior to September 1, 1949, shall be reduced to $300 per month until September 1, 1949, and following September 1, 1949, the support which the defendant has expressly agreed to pay to the plaintiff shall be reduced to the sum of $250 per month, and judgment is entered accordingly, with right of execution to make the same, and to insure said payments for support as against any property owned by the said defendant."

The decree gave to Mullen as his separate property two tracts of land of the total acreage of 378 acres.

█ We are concerned in this case whether the payments to the wife provided for in the decree should continue after the death of George E. Mullen. We have heretofore commented on such a problem. In In re Estate of Yoss, 237 Iowa 1092, at page 1094, 24 N.W.2d 399, at page 400, it is stated: "It is undoubtedly the general rule that periodic payments of alimony to a divorced wife terminate, or at least are presumed to terminate, upon the husband's death, in the absence of a provision in the decree which requires the payments to continue after such death. 17 Am. Jur. 473, section 608; 27 C. J. S. 998, 999, section 240b; 2

1262

Schouler on Marriage, Divorce, Separation and Domestic Relations, Sixth Ed., 1995, section 1833; annotations 18 A. L. R. 1040, 1045, 101 A. L. R. 323, 324. There is some authority that a court has no power without the husband's consent to require payments of alimony to continue after his death. Ibid. In general, the reason for the above general rule is that an allowance of alimony is a substitute for the right of marital support and since such right of support terminates upon the husband's death, periodic payments of alimony should also terminate with the husband's death." See also annotations 39 A. L. R.2d 1408, 1410.

And in Masters v. Masters, 155 Neb. 569, 571, 573, 52 N.W.2d 802, 803, 804, we find a situation where the divorce decree provided for monthly payments: "* * * until further order of the court * * *." A contingent claim was filed against the estate of the deceased divorced husband. The Nebraska court therein held: "The court considers that in the absence of disclosing intention, alimony does not survive the former husband's death [citing cases]."

It is true it is provided in the decree they should continue, "* * * so long as the plaintiff shall live, * * *." But despite this last quoted portion of the decree we necessarily must determine what was the intention of the parties as evidenced by the stipulation which was subsequently incorporated in the divorce decree. And we likewise should seek to ascertain the intention of the court as set out in the various provisions of the decree.

In In re Estate of Yoss, supra, 237 Iowa 1092, 1096, 24 N.W.2d 399, 401 (citing cases), we held the intention of the court is determined from a consideration of all parts of the decree. And we further therein held: "Effect is to be given to that which is clearly implied as well as to that which is expressed [in the decree]." And in the cited case we stated: "In determining the effect of the decree the agreement is properly to be considered * * *." See also annotations in 39 A. L. R.2d 1412 (1955) relative to the intention of a court as determined by the provisions of a decree.

It was stated in In re Estate of Gustason, 173 Kan. 619, 623, 250 P.2d 837, 840, 34 A. L. R.2d 1014, 1019: "The rule

is that contracts to settle property rights between a husband and wife, whether made before or after marriage, are to be liberally construed to carry out the intention of the parties * * *." See also annotations 34 A. L. R.2d 1026, and 1955 Supplemental citations.

What can we determine from the stipulation and the subsequent decree relative to the intention of the parties in entering into the stipulation, and the court in entering the decree?

And as heretofore set forth Mullen was given as his separate property two tracts of land of the total acreage of 378 acres. In some respects there appear to be variances in certain provisions of the decree relative to judgment liens.

It is our conclusion there was no intention on the part of the parties and the court to hold the decedent's estate liable for any payments after his death that were not then past due. And this is particularly true when we consider it was provided that in the case of a default in the payment of support the use of the land by the husband, to which the wife was given title, should be forfeited to her. There surely was no intention to permit the wife to have the use and title to the land and also require the payments mentioned in the decree by claiming default in payment by reason of the death of the defendant and to require the payments mentioned in the decree to continue thereafter.

There is a further reason we have concluded there was no intention by the parties or the court to require support payments from his estate to continue after the death of George E. Mullen. The payment of $500 per month to Kathryn Mullen so long as she shall live was: "* * * subject * * * to conditions as hereinafter set out in this decree * * *." The conditions are incorporated in that portion of the decree wherein Kathryn Mullen is decreed to be the owner of the 320-acre farm. It is apparent to us it was the intention of the parties that if the defendant, Mullen, made the payments then he could have the use of the farm property. If there was a failure to make the payments or to carry out the other conditions the use of the property was forfeited. The defendant, Mullen, could not carry out the conditions after his death. Consequently a forfeiture resulted.

And as evidence of the plaintiff's intentions, as well as her

interpretation of the stipulation and decree, it must be remembered that she has taken possession of the farm and is now receiving all the income therefrom.

We consequently hold there was no intention on the part of the parties or the court to hold the defendant's estate liable for future payments provided for in the decree in case of the death of the defendant, Mullen.

II. The trial court, as heretofore noted, held the provision in the decree which required the defendant to provide an educational fund of $4800 for each of the two minor children had been complied with in that the father, George E. Mullen, had carried insurance made payable to the children in excess of the amount required in the decree for an educational fund. The record shows that by reason of the death of their father, insurance proceeds in the amount of $12,500 were paid for the benefit of each of the minor children.

As heretofore noted, the decree provided the defendant " * * * will make available the sum of $1200 per year for the use of each child in procuring a college education * * *." The term "available" has been defined to mean capable of availing or "capable of being used to accomplish a purpose." Woodley Petroleum Co. v. Arkansas Louisiana Pipeline Co., 179 La. 136, 143, 153 So. 539, 542; State v. Hoblitt, 87 Mont. 403, 288 P. 181, 185; Playa De Flor Land & Imp. Co. v. United States, D. C. Canal Zone, 70 F. Supp. 281; Webster's International Dictionary (1947). It has also been defined as such as one may avail himself of. Woodley Petroleum Co. v. Arkansas Louisiana Pipeline Co., supra. The term "make water 'available' " has been defined in Collins v. Twin Falls North Side Land & Water Co., 28 Idaho 1, 7, 152 P. 200, 202, as being made capable of being used.

It is very apparent that the decedent made available funds by which the education of the minor children was made possible. To hold decedent's estate liable for the sum of $9600 after he had made a large amount of insurance payable to the minor children and the proceeds thereof was paid to them would be most inequitable. Even though the decree referred to the fact the defendant or his estate was liable for the payment of the re-

quired fund, it should not necessarily be construed as meaning it should be the only means by which the requirements for this fund could be made possible. We hold the provisions of the decree relative to an educational fund for the minor children were complied with by reason of the insurance made payable to them. The insurance proceeds made "available" a fund capable of being used for educational purposes and thus this provision of the decree was met.

III. By reason of our previous comments it is our holding and conclusion the trial court should be affirmed in its denial of claimant's claim for support money. We also affirm its holding the making of insurance payable to the minor children and the payment to them of the proceeds thereof complied with the provisions of the decree relative to an educational fund for them. We do not deem it necessary to comment on whether there were changed conditions which required a modification of the decree. —Affirmed.

All JUSTICES concur.