In re Estate of Guy Leslie Roberts, deceased.

Bernice H. Roberts, executrix-appellant, v. Florence Roberts, claimant-appellee.

No. 51471.

(Reported in 131 N.W.2d 458)

Appeal from Polk District Court—RAY C. FOUNTAIN, Judge.

NOVEMBER 17, 1964.

Duncan, Jones, Hughes, Riley & Davis, of Des Moines, for executrix-appellant.

Garten, Lindel & Garten, of Des Moines, for claimant-appellee.

LARSON, J.—The question presented is whether decedent's divorced wife is entitled under the court's decree to the continuance of monthly allowances after his death so as to be a valid claim against his estate. Although this question is not new and has received the consideration of many courts including our own, the exact problems raised here have not been passed upon in Iowa. Raised in this appeal is the question of whether the court has the power to provide for a continuation of alimony payments after the death of the one charged unless it is made pursuant to an agreement or stipulation between the parties, and whether the provisions of the decree herein disclose an intention by the court to obligate defendant's estate for such payments after his death.

We have doubt that the first question was directly raised below, but if so was inferentially rejected, for the trial court concluded it was simply required to determine the intentions of

the judge who issued the divorce decree involved, and that since the decree provided in clear language that the monthly payments were to "continue during the lifetime of the plaintiff and while she remains unmarried", the intention to bind defendant's estate after his death was established and the plaintiff's claim against the estate was valid. It reasoned that since the law is clear that in the absence of such a phrase the payments would cease after defendant's death, its only function would be to require a continuance of these payments during plaintiff's lifetime or until her remarriage, regardless of the death of defendant. We are inclined to agree.

Prior to April 17, 1943, plaintiff and decedent were husband and wife and were the parents of ten children. As a result of a lengthy contested divorce trial, plaintiff Florence M. Roberts was granted an absolute divorce and certain encumbered real estate was awarded her, together with all household goods and furniture. No property settlement stipulation or agreement between the parties appears. Defendant was ordered to pay the mortgage on the real estate and all taxes and special assessments then a lien thereon. The court found that the charge of such cruel and inhuman treatment as to endanger her life was sustained by the noncommunicativeness and silence of the defendant, which affected plaintiff's mind and health. It further found her entitled "to a property division and an award of alimony and support money for her care, support and maintenance * * *." The decree provided for $200 per month "for the care, support and maintenance of the plaintiff and her minor children" and further ordered that sum be reduced when the children all became of age or self-supporting "to One Hundred Dollars ($100) a month to continue during the lifetime of the plaintiff and while she remains unmarried." At times material hereto all children were of age or self-supporting.

Defendant made all payments until his death on March 24, 1962, but none has been made since. On April 5, 1963, after the decedent's will was probated, his former wife filed her claim in the estate in the sum of $1200 together with interest from April 1, 1962, and for all future payments due her during her lifetime at the rate of $100 per month. The claim was rejected and, pur-

suant to trial, judgment was rendered on the 19th day of December, 1963, against decedent's estate in the sum of $2100 with interest at the rate of 5 percent from the date each $100 payment was due, and the executrix of decedent's estate was ordered to pay from the estate $100 per month commencing January 1, 1964, as long as claimant lived. We learn from a motion filed herein October 5, 1964, that appellee Florence Roberts died on August 14, 1964, while this appeal was pending and note that her executor has been substituted for her in these proceedings by order of this court.

I. This court has recognized and followed the general rule that periodic payments of alimony to a divorced wife terminate, or at least are presumed to terminate, upon the husband's death, especially in the absence of a provision in the decree which requires the payments to continue after such death. In re Estate of Yoss, 237 Iowa 1092, 1094, 24 N.W.2d 399, 400, and citations; Mullen v. Mullen, 246 Iowa 1255, 1261, 69 N.W.2d 420, 423; Carrell v. Carrell, 250 Iowa 983, 984, 96 N.W.2d 315; 17 Am. Jur., Divorce and Separation, section 694, page 748; 27A C. J. S., Divorce, section 240(b), page 1155; Annotation, 39 A. L. R. 2d 1406 to 1412.

Appellant contends the true rule as set out in 17 Am. Jur., Divorce, section 694, is quite restrictive and permits the court to make provisions for monthly payments of alimony after the death of the husband only where a statute provides that power or where there is a stipulation or agreement between the parties so providing incorporated in the decree as approved by the court. The basis for this rule, the section states, is simply that alimony is of the same character as the right of support which the wife loses by the dissolution of the marriage, and that any substituted right of support should not be made larger or greater than her basic right of support had she not been divorced.

We recognized that situation in the case of In re Estate of Yoss, supra, and concluded that a court-approved stipulation of settlement and decree, which provided that periodic payments were to continue "for the lifetime of the wife" was "valid and enforceable against the husband's estate." Loc. cit., page 1095 of 237 Iowa.

Appellee contends the power of the court to decree continuation after the husband's death, regardless of any agreement or stipulation, is provided by section 598.14, Code of Iowa, 1962, and that this court was really interpreting the decree, not the stipulation, in the Yoss case, and since the decree provisions are almost the same as in the case at bar, that decision upholding the probate claim is controlling here.

II. While there is some respectable authority that a court has no power without the husband's consent to require payments of alimony to continue after his death, the basis of those holdings is that no statute so provides. See 17 Am. Jur., Divorce and Separation, section 700, page 751. All jurisdictions agree that where such a statute exists, that power is present, and some hold it is inherent in the courts. Murphy v. Shelton, 183 Wash. 180, 48 P.2d 247; Masters v. Masters, 155 Neb. 569, 52 N.W.2d 802, 804; Annotation 39 A. L. R.2d, page 1409, and cases cited.

Section 598.14, Code, 1962, provides: "When a divorce is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be right. Subsequent changes may be made by it in these respects when circumstances render them expedient."

These are broad and inclusive powers and duties placed in the courts by our legislature and, while it is not specifically stated that any provision for alimony payments may extend beyond the death of the one charged with payment so as to bind his estate, we are satisfied that is its effect. When it is determined that a decree clearly provides for such continuation, the estate of the husband will be liable for those payments.

It was pointed out in Murphy v. Shelton, supra, that where a statute relative to divorce not only gives the court power, but also enjoins upon it a duty to make all necessary provisions for alimony, support, etc., management and division of the property, and gives the court power to modify, alter or revise its previous orders and judgments relative to alimony and support from time to time as the circumstances might require, it must be concluded the trial courts have the power to provide alimony beyond the death of the husband.

6

■ III. What, then, was the intention of the judge when he rendered the decree in the matter before us? In the case of In re Estate of Yoss, supra, 237 Iowa 1092, 1096, 24 N.W.2d 399, we stated: "The decree should be construed in accordance with its evident intention. Indeed the determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed." Also see Whittier v. Whittier, 237 Iowa 655, 662, 23 N.W.2d 435, 440; Rank v. Kuhn, 236 Iowa 854, 856, 20 N.W.2d 72, 74. Of course, in determining this intent, we take the decree by its four corners and try to ascertain from it the intent as disclosed by the various provisions of the decree. The problem presented here is unusually difficult.

When we consider the provisions in the decree giving certain real estate to the wife, requiring the husband to pay the mortgage, regular and special taxes thereon, and giving to the wife all household goods, etc., it may be argued that the court was intending to give plaintiff her full and rightful share in the husband's estate and there should be no further burden placed thereon. This inference is further supported by the fact that nothing appears in the finding of the court or the decree which would fairly indicate the court thought punitive awards were proper.

■ On the other hand, the court used in this decree the clear and unambiguous words that defendant pay plaintiff "One Hundred Dollars ($100.00) a month *to continue* during the lifetime of the plaintiff and while she remains unmarried." (Emphasis supplied.) We think these words cannot be read out of this decree, for it was within the court's power to grant such relief in addition to a fair property division. It must be presumed the court knew that without the use of these words the payments would cease upon the death of either party under the general rule clearly announced in our Yoss, Mullen and Carrell cases, supra.

We are aware of the argument that such a provision could have serious effects upon the administration of estates and could result in a better financial position for a divorced wife when the husband died than for a wife who remained married to him. If such a provision was considered unjust or unfair, certainly the

aggrieved party could appeal or, upon a change of circumstances, ask for a modification. Defendant took no such course and it is a fair presumption the terms of this decree as rendered were satisfactory.

We must conclude the inference of alimony termination on the death of decedent was overcome by the specific wording of this decree and that, by the clear expression of when payments should cease, the intent to obligate the husband's estate was established.

IV. In the three cases we have decided concerning this problem, the Yoss case and the Mullen case, both supra, involved interpretations of agreements or stipulations incorporated in the court's decree. They are not too helpful, for both were decided on the clear intention of the parties expressed in the decrees. In the Mullen case, 246 Iowa 1255, 69 N.W.2d 420, while the words used were "so long as the plaintiff shall live", the agreement gave the husband certain rental rights which terminated on his death, and then, as contemplated, the plaintiff benefited by complete ownership instead of by periodic payments to be made from that rental, indicating an intent to terminate at the husband's death.

In the Carrell case, supra, 250 Iowa 983, 96 N.W.2d 315, we held a decree not based upon any stipulation or agreement which provided payments of alimony "as long as defendant [wife] remains unmarried" was not the same as "so long as she shall live" and under the circumstances meant the payments were to cease upon the husband's death or when the wife remarried; that the words there used were not intended to abrogate the general rule of termination.

In other jurisdictions we find courts wrestling with this problem with less than unanimity. They seem to agree that if payments are to terminate or not terminate on the death of either or both parties, the decree should say so, and if the payments after death are to be made a charge against the husband's estate, that can best be resolved by so stating. Trouble arises when that intent is not so clearly expressed.

The case of Farrington v. Boston Safe Deposit & Trust Co., 280 Mass. 121, 181 N.E. 779, is very much in point, although it is

true the parties there assented to the terms of the divorce decree, but as to that point the Massachusetts Supreme Court stated the parties' intention in assenting was immaterial in construing the decree. The court there held it had the power to extend the payments beyond the life of the husband and that these payments could be collected out of the assets of his estate. The decree ordered monthly alimony payments to the wife "during the term of her life" if she should not remarry, and the court held this phrase required such payments be extended beyond the husband's lifetime. While recognizing the general rule that a husband's duty to pay alimony for the support of his wife ceases with his death, it held "only the language of the court as embodied in the decree * * * is to be interpreted", and when it stated the libellee was to pay the libellant a certain sum of money "during the term of her life", the inference was plain that payments accruing after his death were to be made "out of the libellee's estate * * * as a charge thereon." The court reasoned that if his estate were not held, how else could the libellant be paid during the term of her life, and concluded under this language in the decree that they were manifestly to continue until her death or remarriage. It further reasoned "* * * if the judge intended that payments were to cease with the death of the libellee, it would be assumed that he would not have included in the decree a phrase that payments were to be made 'during the term of her life', for it could not be contended that in the absence of such phrase they would continue after the libellant's death, * * *." (Page 126 of 280 Mass.) Hence, the only function of these words was to show that the payments were to continue after his death, and this language reasonably indicated a plain intent to bind the libellee's estate. It referred to a like case of Stratton v. Stratton, 77 Maine 373, 52 Am. Rep. 779. In Taylor v. Gowetz, 339 Mass. 294, 158 N.E.2d 677, 679, 680, 75 A. L. R.2d 1079, a 1959 Massachusetts case, the Farrington case was cited and followed in principle although that case involved a court-approved separation agreement.

Illustrating the difficulty courts encounter in such matters is a similar case where the Florida Supreme Court divided sharply 4 to 3 in holding a provision which provided payments of ali-

mony would be made "during the life of the wife or until she remarried" was conclusive. The majority pointed out the wife was still living and had not remarried. Consequently, they said, the conditions for the termination of the weekly payments had not occurred. Johnson v. Every (Florida, 1957), 93 So.2d 390.

V. With some hesitancy we conclude the expression in the court's decree here as to when these payments were to terminate was sufficiently clear, that this intention was not rebutted by other provisions in the decree, that decedent's estate was bound thereby, and the judgment of the trial court was correct.— Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON and SNELL, JJ., concur.

MOORE, THORNTON and STUART, JJ., dissent.

HAYS, J., not sitting.

MOORE, J.—I dissent.

The two questions stated in the first paragraph of the majority opinion should be answered in the negative.

I. The trial court in the contested divorce case chose to treat division of property separate from allowance of support in the form of periodic payments of alimony. Having done so the decree established the right of support to be essentially the same as prior to divorce. The amount available to the wife both before and after the decree was determined by the husband's earnings and subject to modification (section 598.14).

Ordinarily a decree of divorce settles all the property rights and interests of the parties in the property of each other. Carr v. Carr, 185 Iowa 1205, 171 N.W. 785; Kraft v. Kraft, 193 Iowa 602, 187 N.W. 449; Fitch v. Fitch, 229 Iowa 349, 294 N.W. 577. The decree here gave the property to the wife. Now she contends the husband's property acquired apparently after the divorce is subject as of the time of his death to the alimony payments.

The unreasonableness of her contention is shown by this statement at page 749, 17 Am. Jur., Divorce and Separation, section 694: "Strictly considered, alimony awarded in conjunc-

tion with a final decree of divorce is essentially of the same character as the right of support which the wife loses by the dissolution of the marriage. It is difficult, therefore, to see why the rights of the divorced wife should be greater than those which she would have enjoyed had she not been divorced. Moreover, there is a practical objection to considering the decree of alimony as surviving the demise of the husband where his income upon which the award of alimony was based was derived from professional or business exertions."

I would hold the trial court, after making a separate property division, had no power without the husband's consent to require payments of alimony to continue after his death. By the decree she was awarded and accepted the real and personal estate of her husband. Her interest in his estate was thereby exhausted. The trial court was without authority to impose a charge upon his estate after his death. Any such attempt is unjust to other claimants of his property. See annotation, 39 A. L. R.2d 1406 to 1409.

II. I do not believe the trial court intended the alimony payments should continue after the husband's death.

The decree should be construed in accordance with its evident intention. The determinative factor is the intention of the court as gathered from all parts of the decree. Effect is to be given to that which is clearly implied as well as to that which is expressed. Whittier v. Whittier, 237 Iowa 655, 662, 23 N.W.2d 435, 440; In re Estate of Yoss, 237 Iowa 1092, 1096, 24 N.W.2d 399, 401; Mullen v. Mullen, 246 Iowa 1255, 1262, 69 N.W.2d 420, 424; Carrell v. Carrell, 250 Iowa 983, 984, 96 N.W.2d 315, 316. See also annotations in 39 A. L. R.2d 1412.

In the last three cited cases we consider the question of whether alimony payments were intended to continue after the husband's death. In each we avoid deciding whether the trial court has power to make such an order in the absence of a stipulation or agreement of the parties.

In Mullen and also Carrell we recognize the general principles involved and quote from In re Estate of Yoss, 237 Iowa 1092, 1094, 24 N.W.2d 399, 400, as follows:

"It is undoubtedly the general rule that periodic payments

of alimony to a divorced wife terminate, or at least are presumed to terminate, upon the husband's death, in the absence of a provision in the decree which requires the payments to continue after such death. 17 Am. Jur. 473, section 608; 27 C. J. S. 998, 999, section 240b; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations, Sixth Ed., 1995, section 1833; Annotations 18 A. L. R. 1040, 1045, 101 A. L. R. 323, 324. There is some authority that a court has no power without the husband's consent to require payments of alimony to continue after his death. Ibid. In general, the reason for the above general rule is that an allowance of alimony is a substitute for the right of marital support and since such right of support terminates upon the husband's death, periodic payments of alimony should also terminate with the husband's death."

In Yoss the payments were provided "during the life of the wife" and the decree adopted the stipulation of the parties containing such provision. We affirmed the trial court's order allowing the wife's claim. In Mullen the decree incorporated the parties' stipulation requiring payments "so long as the plaintiff shall live, the sum of $500 per month, subject, however, to conditions as hereinafter set out in this decree". We held there was no intention on the part of the court or the parties to hold the husband's estate liable for payments falling due after his death. In Carrell the decree required decedent to pay the wife, "the sum of $160 per month as long as defendant remains unmarried". She remained unmarried at the time of his death. We held the provision did not show an intent of the court to depart from the general rule. Her claim was denied.

Here, it is interesting to note the provision the monthly payments were to "continue during the lifetime of the plaintiff and while she remains unmarried" is not found in the record prior to the decree. No reason for such a provision is indicated by any finding or conclusion of the court.

The provision is only a statement of the law. Of course she would not be entitled to support if she married another and certainly payments would stop at her death. That is all the trial court intended to say. The experienced trial court knew the general rule the periodic payments of alimony terminate upon

the husband's death. If the trial court did not intend to have the general rule apply he could have clearly so stated.

I would reverse.

THORNTON and STUART, JJ., join in this dissent.