Jane **HUTCHESON**, Appellee,

v.

Thomas S. **HUTCHESON**, Appellant.

No. 54943.

Supreme Court of Iowa.

May 11, 1972.

Thomas L. McCullough, Sac City, and M. Gene Blackburn, Maxwell, for appellant.

Edward S. White, Carroll, for appellee.

REYNOLDSON, Justice.

Respondent appeals from the alimony provisions of a dissolution of marriage decree. We modify and affirm in part and remand in part.

These parties were first married in 1940. At that time respondent was a railroad switchman. After air force service he was graduated in pharmacy from Creighton University, and following two years as a pharmacist, returned to attend medical school. Petitioner generated a family income as assistant medical records librarian during respondent's five years of medical education.

Respondent practiced medicine at Harlan and Ida Grove, Iowa, Dallas, Texas, and commencing in 1965, at Denison, Iowa. Two sons were born of this marriage, one self-supporting at time of trial and the other, age 19, in his second year at the University of Iowa.

Approximately one year before this action petitioner divorced respondent. Following a reconciliation effort, the parties remarried.

October 1, 1970, about the time this litigation began, respondent terminated his medical partnership at Denison. His net income for 1970 was $71,488. In several prior years it averaged over $60,000.

Respondent testified he had known for a long time he had a "heart problem." In September 1970, specialists at Clarkson Hospital, Omaha, Nebraska, examined respondent. A letter from them, stipulated into evidence, advised he should work a 40 hour week as a physician and not work 16 hours a day in general practice as he had been doing. Respondent testified Dr. Donald A. Miller of Indio, California, had of-

fered him a job at $2000 per month, and declared, "My firm intentions for the future regarding the practice of medicine are to work 40 hours a week and I am going to continue to work 40 hours a week I hope the rest of my life so that I can prolong my life and these are the arrangements I have made with the doctor in California." Petitioner testified respondent told her he would be making only $1400 per month, and she wouldn't be getting much alimony out of that.

At trial time petitioner was 51 years of age. The record does not reflect she had any advanced education or training. She was employed for two dollars per hour on a half-time basis. She testified she knew of no physical defects or illness but did not feel she could work full-time.

These parties owned a mortgaged home in Denison, various stocks and bonds, accounts receivable from medical practice, life insurance, cash, and two Cadillacs. It was agreed their assets totaled $77,339 in value, their liabilities approximately $26,027, resulting in a net worth of $51,000. These assets were essentially equally divided by the decree.

Trial court's decree, entered March 31, 1971, provided with respect to alimony:

"The Court is unable, on the basis of the record made, to make any satisfactory finding with regard to a change in earning capacity between the calendar year 1970 and the future. * * *

"It is elementary, of course, that the law requires determinations with regard to allowances and awards to be made on the basis of earning capacity and not on the basis of deliberately lessened earnings. The Court believes that an interim order should be entered, secured by certain assets shown in the evidence, and that further evidence could be offered either in person or by way of depositions after a reasonable period of time and upon the basis of which the Court could fairly make a determination as to the re-

spondent's earnings and earning capacity after he is established in his new practice and after the conditions of his health become more discernible. * * *

"The Court finds that respondent's income, except for the interruption of about a year, will continue to be $50,000.00 annually or higher. * * *"

The trial court required respondent's interests in the assets should be held in trust by a bank to secure payment of alimony and the property settlement adjudicated, and further decreed:

"An order terminating the trust will be entered after further hearing herein in not less than one year and when the doctor's permanent earning capacity and health condition can be established by evidence later introduced.

"IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED that the respondent pay alimony to the petitioner, through the Office of the Clerk of this Court, in the sum of $1,000.00 monthly."

Respondent asserts three propositions relied on for reversal: 1) An award for alimony in excess of proven needs of the petitioner is punitive in nature and violative of clear legislative intent to discard the fault concept, 2) the amount awarded is unreasonably excessive in view of the property settlement and respondent's diminished earning capacity, and 3) an award of alimony should not be made in perpetuity.

I. *Was the alimony award in excess of petitioner's proven needs and therefore punitive in nature?*

Respondent argues although fault has been inextricably involved in our alimony decisions since Dupont v. Dupont, 10 Iowa 112 (1859), this consideration was never intended by the legislature. More important, he contends, alimony fixed in excess of proven needs is necessarily punitive and clearly violative of the legislative intent

(in the Dissolution of Marriage Act, chapter 598, Code, 1971) to banish fault from the marriage dissolution arena.

■ Section 598.21, Code, 1971, pertinently provides:

"When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified."

This is a reenactment of § 598.14, Code, 1966, except for the inconsequential substitution of "justified" for the word "right." There is nothing in this statute limiting the court's consideration of alimony solely to the element of petitioner's basic "needs."

Trial court made no finding of fault, nor do we. While the question whether that element should be considered in fixing alimony is not before us here, it is not contended other determinative factors, identified in our decisions under the prior statute, should not be considered. Yansky v. Yansky, 172 N.W.2d 114 (Iowa 1969); Schantz v. Schantz, 163 N.W.2d 398 (Iowa 1968). Fault was never more than one of the criteria to be weighed, and was seldom controlling. Sherrard v. Sherrard, 175 N. W.2d 411 (Iowa 1970).

What respondent states was evidence of cost of petitioner's "basic needs"—$5750—was only a partial itemization of certain recurring taxes, utilities, insurance premiums and like costs. It did not include expense for food, repair and replacement of auto, and household furniture and equipment, home repair and maintenance, medical and dental expense, cosmetics, hairdresser, personal items, church support, gifts, charities, vacations and recreation. In addition, petitioner will be required to pay income tax on her alimony payments, which are deductible by respondent. Int. Rev.Code of 1954, §§ 71, 215.

Important among those criteria ordinarily considered, and important here, is petitioner's age, the earning capacity of both parties, and their accustomed standard of living. These parties, although married a total of about thirty years, had a net worth of less than one year's income. The record indicates they lived in a three bedroom home worth $36,000, complete with new furniture and equipment. Each drove a Cadillac. Obviously, these parties enjoyed a high standard of living. Where trial court was not persuaded respondent's income would be significantly diminished, it might rightly decide under this record that during the "interim" period petitioner should not be compelled to lead a more austere life simply because of the marriage dissolution. Tallarico v. Tallarico, 164 N. W.2d 805 (Iowa 1969).

■ We find nothing in the record to indicate the interim alimony provided in the decree was in excess of petitioner's current needs, considering the customary living standard of these parties. Trial court found no more than a temporary reduction in respondent's ability to pay. The alimony therefore may not be termed punitive, and no element of fault is implied. Respondent's first proposition relied on for reversal is without merit.

II. *Was the alimony awarded unreasonably excessive in view of the property settlement and respondent's alleged diminished earning capacity?*

Much of what we said in division I is pertinent here. There is nothing unique about this property settlement. These parties and trial court apparently contemplated petitioner would receive, as part of her approximately one-half share in the assets, a home with an equity of $12,000 (subject to a mortgage of $24,000 which she will be required to pay), and household goods and equipment valued at.$8500. These are not income-producing assets, however convenient for use and enjoyment.

■ In resolving the alimony issue each case is peculiarly dependent on its own facts. Bitner v. Bitner, 176 N.W.2d 162 (Iowa 1970); Morris v. Morris, 163 N.W. 2d 549 (Iowa 1968). This case has unusu-

al facts, in that the respondent doctor, with an extremely high earning potential, had purposely and temporarily disengaged himself from practice and expressed an intent to reduce his income. Consequently, this case had an unusual disposition below, with the trial court making only an interim award of alimony, as we interpret the decree. Respondent wants the amount fixed reduced, both in the interim and permanently, claiming trial court abused its discretion. Petitioner's position is ambivalent; she contends on the one hand the alimony provision in the decree was not final and therefore not subject to appeal, and on the other hand asserts the amount should be made permanent and affirmed as established below.

■■ We believe the rationale of Shipley v. Shipley, 182 N.W.2d 125 (Iowa 1970) is applicable under these circumstances. At pages 128 and 129 of 182 N.W.2d we relevantly said,

"We think decrees of this kind, including and notwithstanding the provision for subsequent review, are appealable under the type of divorce proceeding we have in Iowa.

\* \* \* \* \* \*

"The way to avoid such tangles is to stay with the orderly procedure contemplated by our divorce statute and civil rules, looking toward a prompt trial and decree and appeal. If a trial court needs additional evidence on some aspect of the case, it can do as trial courts have always done: hold up decree shortly, request prompt submission of additional evidence on the point, and then pass decree. But if a provision for change on future developments is really necessary in a decree, the whole decree should nonetheless be held to go into effect when passed and be appealable, including the provision for change."

Applying that reasoning here, we hold this case is appealable and that this court has the requisite jurisdiction to decide the issues before us. We further hold the trial court, in fixing interim alimony, did not abuse its discretion and the amount is approved. Also affirmed, of course, is the provision for review provided in the decree. It follows the case is remanded for trial court's reconsideration of the alimony award in the light of respondent's present health, income, and earning capacity. Until such hearing, the alimony ordered by the trial court shall be paid. All amounts ordered paid by this court for temporary support during the pendency of this appeal shall be credited against the unpaid installments of interim alimony provided in the decree.

III. *Was the alimony award made in perpetuity?*

■ Of course, the order to pay petitioner $1,000 per month alimony was not intended to be unlimited as to time or conditions. The court's intent to review the award within one year probably accounted for the omission to specify situations which would cause such payments to terminate. In order to settle this issue, however, we hereby modify the decree to provide that the interim award and any subsequent modifying alimony award shall be paid only until petitioner remarries or until either party dies, whichever occurs first. Thus these issues will not require further litigation. See Myers v. Myers, 195 N.W.2d 113 (Iowa 1972); In re Roberts' Estate, 257 Iowa 1, 131 N.W.2d 458 (1964).

IV. *Attorney fees for petitioner's attorney on appeal.*

■ Petitioner's attorney was awarded $3000 for his services in the trial court. He has requested an award of additional attorney fees for services in connection with this appeal, submitting an itemized statement of his services and advanced costs totaling $3310.60. This appeal, while pending, has been marked by several hearings and applications, including an application for support pending appeal, application to release funds from the trust, and application to reopen for further testimony. Petitioner was obligated to defend trial

court's decree and is entitled to an allowance for attorney fees on appeal. Such an allowance depends upon the wife's financial needs and the ability of the husband to satisfy them. Raabe v. Raabe, 191 N.W.2d 551 (Iowa 1971); Hand v. Hand, 257 Iowa 643, 133 N.W.2d 63 (1965). We do not fix the total fee; we merely determine that portion which shall be paid by opposing party. Conkling v. Conkling, 185 N.W.2d 777 (Iowa 1971). We hold respondent shall pay $2823.10 of this total fee.

V. *Disposition of the trust and implementation of property settlement.*

As shown by that portion of the decree set out in the factual summary, above, a trust was created with respect to respondent's interest in the assets, to secure compliance with the property settlement and the interim alimony award. Trial court provided the trust would be terminated in not less than one year, following hearing at which respondent's permanent earning capacity and health condition could be established. In connection with two of the applications filed in this court, we entered an order on July 13, 1971 directing these parties to deliver certain personal property to the bank trustee, in order to further protect the property settlement. Certain payments from that trust, provided by the decree, were stayed pending further order of court. All of these matters are now remanded to the District Court of Iowa, in and for Crawford County. That court shall have full authority to implement the property settlement decreed, and all other provisions of that decree except as herein modified. However, if the costs of this action, the aforesaid attorney fees to be paid by respondent, or any installments of interim alimony remain unpaid when the trust is terminated, said sums shall be paid from the trust corpus before any final distribution to respondent.

Modified and affirmed in part; remanded in part.

All Justices concur, except HARRIS and McCORMICK, JJ., who take no part.