In the Matter of the ESTATE OF Kenneth W. JONES.

Ethel OSSMAN, f/k/a Ethel Jones, Appellee,

v.

Robert J. PATTEE, Jr., Executor of the Estate of Kenneth W. Jones, Appellant.

No. 88–385.

Court of Appeals of Iowa.

Oct. 20, 1988.

Robert J. Pattee of Robert J. Pattee, P.C., Independence, for appellant.

Daryl E. Roberts of Roberts & Murphy, Independence, for appellee.

DONIELSON, Presiding Judge.

The executor appeals from the district court ruling which continues alimony payments to the decedent's former wife. The executor asserts that the alimony terminated at decedent's death because the dissolution decree did not specifically provide for it to continue after his death.

The five-year marriage of Ethel and Kenneth W. Jones was dissolved in 1976. The decree directed Kenneth to pay Ethel alimony of $100 per month "until such time as [Ethel] dies or remarries." Ethel did not remarry after the decree was entered, but she did assume her maiden name of Ossman.

In 1980, Kenneth applied for a modification of the decree terminating alimony. The application was denied. Kenneth died in 1987. He was current on his alimony payments at the time of death. Since then, no alimony payments have been made.

Ethel filed a claim against the estate for alimony. The executor of Kenneth's estate disallowed the claim. Before a hearing was held on the claim, both sides filed motions for summary judgment. The only issue before the court was whether or not the alimony terminated at Kenneth's death. The district court granted Ethel's motion after concluding the language in the dissolution decree clearly indicated that the alimony should not terminate at Kenneth's death. The executor was directed to pay Ethel $100 per month until her remarriage or death and to keep the estate open until such time.

The general rule is that periodic payments of alimony to a divorced wife are presumed to terminate upon the husband's death, especially in the absence of a provision in the decree which requires the payments to continue after such death. *In re Roberts' Estate*, 257 Iowa 1, 4, 131 N.W.2d 458, 460 (1964). The decree must clearly provide for the continuation of alimony beyond the obligor's death before the court may hold the estate liable for those payments. *Id.*

The decree in this case provides that "Respondent is required to pay to Petitioner One Hundred Dollars ($100.00) per month commencing ..., until such time as Petitioner dies or re-marries." This lan-

guage does not express a clear intent to hold the estate liable. There is no provision addressing the consequences of respondent's death. Therefore, we must construe the dissolution decree in accordance with its evident intention. The determinative factor is the intention of the court as gathered from all parts of the decree. *Id.* 257 Iowa at 6, 131 N.W.2d at 461. To determine this intent, we take the decree by its four corners and try to ascertain from it the intent as disclosed by the various provisions of the decree. *Id.*

The decree shows that the parties were married for only five years. At the time of the dissolution decree, Ethel was sixty-one years of age and Kenneth was sixty-five. Ethel was unemployed and receiving social security payments. Kenneth fulfilled his monthly support obligation to Ethel for over ten years until his death.

Given the parties' ages, if the court had intended the support payments to continue after Kenneth's death, the decree should have clearly said the estate would be liable. Furthermore, the short duration of the marriage supports termination of the payments at Kenneth's death.

The property division of the decree gave Ethel the property in the city and all the household goods, garden equipment, and tools. This provision enabled her to maintain her household. Kenneth was able to keep the farm, but was required to pay the debts of the marriage except those listed in the decree.

The farm had been in the Jones family for a century and was excludable from the marital assets. Iowa Code § 598.21(1) (1987). The farm operation being the most significant asset in Kenneth's estate, we cannot now require the estate to use it or its proceeds to pay Ethel alimony for life. Lacking a clear intention otherwise, we find no reason to depart from the general rule terminating alimony payments upon the obligor's death. *See In re Marriage of Bornstein*, 359 N.W.2d 500, 503 (Iowa App. 1984). Ethel has been given an equitable distribution considering the length of the marriage and the economic situation of the parties.

This result is similar to that reached in *Mullen v. Mullen*, 246 Iowa 1255, 69 N.W. 2d 420, 424 (1955). The *Mullen* decree provided for payments "so long as the plaintiff shall live." *Id.*, 246 Iowa at 1262, 69 N.W.2d at 423. However, the provisions of the decree showed no intention to require payments by the estate. The court held the estate not liable despite the use of these words. *Id.*, 246 Iowa at 1263, 69 N.W.2d at 424.

*In re Robert's Estate*, the court found the decree clear and unambiguous where the words "*to continue* during the lifetime of the plaintiff and while she remains unmarried" were used. 257 Iowa at 6, 131 N.W.2d at 461 (emphasis supplied). "It must be presumed the court knew that without these words the payments would cease upon the death of either party under the general rule."

The district court did not add these or any other words to take this case out of the general rule. It merely stated the two conditions upon Ethel necessary for her to continue receiving alimony. The presumption terminating alimony upon the obligor's death controls absent a clear provision otherwise. Therefore, we reverse the district court's ruling granting Ethel's motion for summary judgment and terminate the payments to Ethel of $100 per month effective as of the date of decedent's death. The estate no longer is required to remain open until the death or remarriage of Ethel.

REVERSED.

All Judges concur, except SACKETT, J., who specially concurs.

SACKETT, Judge (specially concurring).

I concur specially. I agree with the majority's decision but find the fact the Jones farm has been in the family for one hundred years is not relevant to the issue and should not have been considered as a factor by this court in assessing the issue.